**In re James W. HUMPHRES, Debtor.**

**Jane G. Humphres LINDSEY, Plaintiff,**

**v.**

**James W. HUMPHRES, Defendant.**

**Bankruptcy No. 80–30025.**
**Adv. No. 80–3074.**

United States Bankruptcy Court,
N.D. Mississippi, W.D.

April 28, 1983.

---

T. Victor Bishop, of Brown & Bishop, Fulton, Miss., for plaintiff.

Roger H. McMillin, Jr., New Albany, Miss., for defendant.

## MEMORANDUM OPINION

EUGENE J. RAPHAEL, Bankruptcy Judge.

On March 31, 1980, debtor, James W. Humphres, filed his voluntary debtor's petition under chapter 7 of the Bankruptcy Code of 1978. Certain schedules were attached thereto. On May 27, 1980, debtor filed an amended schedule A–3 (Creditors Having Unsecured Claims Without Priority), by which he named as an additional creditor Jane G. Humphres, describing her claim in the amount of $8,566.46 as follows:

"December 28, 1979, liability to former wife, Jane G. Humphres for primary responsibility for a second mortgage to 1st Citizens National Bank. (This is the same debt scheduled as the third item on schedule A–2.)"

On June 6, 1980, said Jane G. Humphres, creditor, filed her "Objection to Discharge" to the discharge of the debt owed her by James W. Humphres, debtor, "as listed in his bankruptcy petition". Said "objection" alleged, inter alia:

"Creditor would show that the debt is included in the exceptions to discharge set out in Chapter 11, Section 523(5) of the United States Code, Annotated, Revised Bankruptcy Act, and attached hereto as an exhibit to this objection is a certified copy of a property settlement and separation agreement executed by the creditor and debtor pursuant to a divorce action in the Itawamba County Chancery Court, Cause Number 9685, in which the debtor agreed, in providing support to the creditor, to pay the debt now sought to be discharged by the debtor."

Said Jane G. Humphres, creditor, prayed ". . . that an adjourned first meeting of creditors be set with notice to the debtor so that the creditor may examine the debtor, *or in the alternative, that the Bankruptcy Judge determine the debt be non-dischargeable*." (Emphasis supplied)

Pursuant to the Rules of Bankruptcy, said creditor was required to convert her "objection" to a formal complaint. Utilizing her new surname by remarriage, said creditor, Jane G. Hamphres Lindsey, filed her "Complaint For Objection To Discharge of Bankrupt" on August 21, 1980. Although the caption to said complaint mentioned the word "discharge", the only prayer in said complaint suggested that "this court should, upon the hearing of this cause, enter a judgment for the plaintiff, ruling the debt due from the defendant to the plaintiff as a non-dischargeable debt." The aforementioned "objection" exhibited both a copy of a "Property Settlement and Sepa-

ration Agreement" dated December 28, 1979, and a copy of a final decree of divorce, including said property settlement and separation agreement, dated February 27, 1980. The complaint exhibited only a copy of said property settlement and separation agreement.

In addition to clauses making various dispositions of certain articles of personalty, said property settlement and separation agreement includes the following provisions with respect to the "home owned by the parties":

"8. That Husband shall deed his interest in the home owned by the parties to Wife on the date the divorce becomes final. 9. That Husband shall be responsible for the note at First Bank which consists of a second mortgage on the property owned by the parties."

The final numbered paragraph of said property settlement and separation agreement reads as follows:

"10. It is the expressed desire of the parties hereto, for the considerations above set out in and the mutual releases herein contained, that the parties release and relinquish any and all property that they may have as to the other's property; each party intending hereby to make a full and complete settlement of any and all property rights between the parties so that any and all property that may hereinafter appear in the name of either one shall be his or her separate property the same as though said parties had never been married."

Defendant/debtor, James W. Humphres, filed his answer on September 22, 1980. The trial of this adversary proceeding was conducted by the court on November 18, 1980. The court reserved its decision herein.

The evidence revealed no dispute as to the existence of said indebtedness; nor was there any conflict as to the amount thereof.

The said James W. Humphres and the said Jane W. Humphres were married for approximately six years before their final decree of divorce was rendered on February 27, 1980. No children were born of their marriage, but Jane G. Humphres was the mother of two daughters who lived with their mother during her marriage to James W. Humphres. In or about the year 1978, after they had been married for approximately five years, James W. Humphres and Jane G. Humphres purchased a home in a rural area in Northeast Mississippi. Title to the home became vested in them jointly. They lived together in said home until their separation shortly before the negotiation of their aforementioned property settlement and separation agreement on December 28, 1979. On said date the home was being rented to someone else. Neither James W. Humphres nor Jane G. Humphres lived in said home between the dates of said property settlement and separation agreement and the date of said divorce. Jane G. Humphres married a Mr. Lindsey on March 13, 1980, and she and her new husband moved into said home in or about the month of April, 1980. At some time between April, 1980, and the November 18, 1980, trial of this adversary proceeding, Jane G. Humphres Lindsey moved with Mr. Lindsey to Tupelo, Mississippi to be near Mr. Lindsey's job in Tupelo. Jane G. Humphres Lindsey was in Tupelo for about one month and then moved back into the subject home after her separation from Mr. Lindsey. She continued to live in the subject home at the time of the trial of the complaint herein.

In connection with the divorce proceedings based on alleged irreconcilability between James W. Humphres and Jane G. Humphres, Jane G. Humphres was not represented independently by an attorney. She relied on her husband's attorney for advice. She had an eleventh grade education. The testimony indicated that she was not advised as to the legal distinctions between alimony or support money on the one hand and a property settlement on the other. Although not explicit on the face of the property settlement and separation agreement, the parties were in agreement at the trial that Jane G. Humphres was obliged to pay the first "mortgage" or deed of trust on the home. Although there was no specificity of date in the record, James W.

Humphres did convey his interest in said home to Jane G. Humphres at some point in time after the signing of said property settlement and separation agreement. The second "mortgage" payments on the home were $200.00 per month, and Jane G. Humphres Lindsey testified that she was not financially able to pay such payments. Indeed, she testified that as of the time of said trial no payment had been made by anyone on said second "mortgage" since a payment made in January, 1980. James W. Humphres testified that he had intended to make the second "mortgage" payments at the time when he signed said separation agreement, but financial reverses which led to his filing a petition in bankruptcy had prevented his making such payments.

The decision in this adversary proceeding must resolve two legal questions arising out of the foregoing facts. Such legal issues requiring resolution are:

(1) Was the provision that debtor be "responsible for the note at First Bank which consists of a second mortgage on the property owned by the parties" an obligation in the nature of alimony to, maintenance for or support of debtor's aforementioned spouse?

(2) If said obligation was in the nature of alimony to, maintenance for or support of plaintiff, did debtor's obligation cease upon his former spouse's remarriage on March 13, 1980?

### I

As to the first of said legal questions, this court is persuaded by the logical opinion of the Bankruptcy Court for the Southern District of Ohio expressed in *In re Diers,* debtor, 7 B.R. 18, 6 BCD 983 at pp. 984 and 985 (1980) which provides, inter alia:

"On these facts, we must decide whether the assumption of debts by defendant, as provided for in the Separation Agreement and the Decree of Dissolution, constitutes "alimony to, maintenance for, or support of" plaintiff within the meaning of section 523(a)(5) of the Bankruptcy Code so as to be a nondischargeable [3] debt in bankruptcy. 11 U.S.C. section 523 in pertinent part provides:

'(a) A discharge under section 727, 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;'

It may be helpful to point out what is *not* at issue in this case. Subsection (B) of section 523(a)(5), although reproduced above and discussed in defendant's memorandum, is not directly applicable to the present case. Subsection (b), in its terms, applies when a debt to a spouse has been "*designated* as alimony, maintenance, or support" (emphasis added). The Separation Agreement and the Decree of Dissolution do not designate, or even refer to, anything as alimony, maintenance, or support. Subsection (B) may, however, be relevant in construing subsection (5). Subsection (B) clearly reflects a legislative intent to direct the courts to look behind a designation of alimony and determine the true nature of the liability. The same result should logically occur in the absence of a designation of alimony, i.e., the bankruptcy court should determine the essence of the liability in the absence of a label put upon it by the parties.

What is under consideration in this case is not a specific sum ordered to be paid by defendant to plaintiff. Rather, the "debt ... to a former spouse" is actually a promise [4] by defendant to pay certain debts to creditors (Provident Bank and Shillito's). Section 523(a)(5) however, appears to contemplate this situation. The legislative history indicates that:

[Section 523(a)(5) ] will, however, make nondischargeable any debts resulting

from an agreement by the debtor to hold the debtor's spouse harmless on joint debts, to the extent that the agreement is in payment of alimony, maintenance, or support of the spouse, as determined under bankruptcy law considerations that are similar to considerations of whether a particular agreement to pay money to a spouse is actually alimony or a property settlement.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 364 (1977). Accord S.Rep. No. 95–989, 95th Cong.2d Sess. 79 (1978); House Debates 9–28–78 and Senate Debates 10–6–78. This language also imposes upon a bankruptcy court the obligation to determine under federal law, not state law, whether the agreement is actually in the nature of alimony, maintenance or support.

Prior to enactment of the Bankruptcy Code which became effective October 1, 1979, federal courts in interpreting the bankruptcy laws looked to state law to determine whether a liability constituted alimony, maintenance or support. See, e.g., *Nitz v. Nitz,* 568 F.2d 148 (10th Cir., 1977); *In re Waller,* 494 F.2d 447 (6th Cir., 1974); *Melichar v. Ost,* 445 F.Supp. 1162 (D.Md., 1977). Under the new Code, however, federal bankruptcy law will determine whether a liability is alimony, maintenance or support, and this court is not bound by state law.

What constitutes alimony, maintenance or support will be determined under the bankruptcy laws, not State law. Thus, cases such as *In re Waller,* 494 F.2d 447 (6th Cir., 1974) ... are overruled and the result in cases such as *Fife v. Fife,* 1 Utah 2d 281, 265 P.2d 642 (1952) is followed.

H.R.Rep. No. 95–595, *supra* at 364; S.Rep. No. 989, *supra* at 79. *Accord* 3 Collier on Bankruptcy Para. 523.15[1], at 523–108 (15th ed., [5] 1979), See *Pauley v. Spong,* [3 B.R. 619] 1 CBC 3d 1104 (B.J.W. D.N.Y., 1980); relying on *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

The Bankruptcy Court, under the Code, then is to make a determination, independent of state law, of whether an agreement constitutes alimony, maintenance, or support, and the court is to look to the substance of the liability ...

Alimony is an allowance for support and maintenance and it has been said to be a substitute for marital support. 24 Am Jur.2d 641. In today's climate it is possible for an award of alimony, support or maintenance to be fixed in favor of either spouse."

In the adversary proceeding sub judice the court notes that the parties had been married for approximately six years. Although no children were born of their marriage, two of Mrs. Humphres' daughters had lived with them. The home was purchased after approximately five years of marriage between the parties. The parties resided together in said home. Although their separation and subsequent events led plaintiff to leave the home temporarily on two occasions, she returned to the home and was living there at the time of the trial herein. Although not explicit in the record, there is a clear inference that the debtor's obligation to pay said second "mortgage" was to be an ongoing and long-range obligation. Looking to the totality of the circumstances and acting pursuant to this court's decision-making responsibility under the *Diers* case, *supra,* this court concludes that the debtor's obligation constitutes alimony to, maintenance for, or support of plaintiff within the meaning of section 523(a)(5) of the Bankruptcy Code.

## II

As to the second legal question posed herein, this court finds a clear and persuasive guideline for deliberation in *In re Warner,* bankrupt, et al., 5 B.R. 434, 6 BCD 788, 791 (Bkrtcy.1980), decided by the Bankruptcy Court for the District of Utah, which provides, inter alia, as follows:

"Thus, federal law applies in determining what is alimony, maintenance or support for the purpose of determining the nondischargeability of the debts involved.

This is not to say, however, that questions concerning the underlying relationship creating an obligation of alimony, maintenance and support are not questions of state law. Those issues, which would include, for example, ... whether a remarriage terminates a legal obligation of support, must be decided under applicable state law, for it is to the states that such issues of domestic relationships are committed ..."

The unmistakable import of Mississippi law as to the effect of remarriage of a spouse to whom alimony, maintenance or support has been awarded in a divorce decree is found in the following pertinent holdings:

"In our opinion, when a wife remarries, a new status is created which relieves the former husband from further duty to support her. She, in effect, elects to take support from her second husband, and we do not think the law contemplates that she shall marry again, and then have her former husband support her and relieve her last husband from that duty." *Sides v. Pittman,* [167 Miss. 751] 150 So. 211 (1933), decided by the Supreme Court of Mississippi.

"But Mrs. East is not entitled after the date of her remarriage to the monthly payments for her support nor the mortgage installment payments against the former home. Her remarriage relieved her former husband of all duty to support and maintain her thereafter." *East v. Collins,* [194 Miss. 281] 12 So.2d 133, 135 (1943), decided by the Supreme Court of Mississippi.

"Of course if this agreement to pay the $78 monthly installments of the indebtedness on the real estate had been fixed by the chancellor in the first instance as a part of the alimony to be paid to the wife, then her remarriage would have terminated his obligation to pay the $78 per month ..." *Logue v. Logue* [234 Miss. 394] 106 So.2d 498, 500 (1958), decided by the Supreme Court of Mississippi.

"The awarding of the use and occupancy of the home place to the complainant in the original decree was an integral part of the support due by a husband to his wife. It was in the nature of continuing alimony payable by the month. It was subject to change if the wife remarried ..." *Savell v. Savell,* 290 So.2d 621, 624 (1974), decided by the Supreme Court of Mississippi.

Accordingly, notwithstanding the court's earlier expressed opinion that the second "mortgage" payments for which debtor was responsible constituted alimony, maintenance or support as distinguished from a property settlement, nevertheless this court is constrained to the view that such alimony, maintenance or support was exceedingly short lived in that said support obligation existed only from the date of the divorce, February 27, 1980, until the date of plaintiff's remarriage, March 13, 1980. Her remarriage terminated debtor's obligation under applicable state law. This record contains no evidence whatsoever as to the periodic due dates of said second "mortgage". This court cannot speculate as to whether or not such a due date was reached between the date of the divorce and the date of the remarriage. Therefore, there is no evidence to justify a determination that any amount is nondischargeable in this adversary proceeding.

A judgment will be entered in accordance with these findings of fact and conclusions of law.