**In re Ronald S. FREYER, Debtor.**

**Edwina H. FREYER, Plaintiff,**

v.

**Ronald S. FREYER, Defendant.**

**Bankruptcy No. 86 B 20503.
87 Adv. 6009.**

United States Bankruptcy Court,
S.D. New York.

March 30, 1987.

Robert G. Schneider, Eastchester, N.Y., for Edwina H. Freyer.

Aronwald & Pykett, White Plains, N.Y., for Ronald S. Freyer; Daniel Pykett, of counsel.

## DECISION ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF CERTAIN DEBTS

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The plaintiff wife seeks to have determined as nondischargeable certain obligations of her debtor husband which were referred to in a separation agreement that survived a divorce decree. The debtor husband contends that his requirement to pay the obligations in question was not intended as "in the nature of alimony, maintenance, or support" within the meaning of 11 U.S.C. § 523(a)(5)(B) and that his proposed payment of these obligations represents a property division which gives rise to a dischargeable debt in his bankruptcy case.

### FINDINGS OF FACT

1. On October 30, 1986, the debtor, Ronald S. Freyer, filed with this court his vol-

untary petition for relief under Chapter 7 of the Bankruptcy Code.

2. Thereafter, the plaintiff, Edwina H. Freyer, who is the debtor's former wife, commenced an adversary proceeding against him to determine the dischargeability of the $45,000 debt due I.B.M. Interstate Employees Federal Credit Union which is secured by a second mortgage on the home in Shrub Oak, New York in which the plaintiff and her minor children reside. The plaintiff also seeks to determine the dischargeability of the debts owed by the debtor to Chase Manhattan Bank and J.C. Penney Co.

3. Prior to January 7, 1986, the plaintiff and the debtor were husband and wife. On September 9, 1985, the parties entered into a "Stipulation of Settlement and Agreement". On January 7, 1986, the plaintiff and the debtor were divorced pursuant to a judgment of divorce which expressly provided that the "Stipulation of Settlement and Agreement" shall survive and not be merged into the judgment of divorce.

4. Pursuant to the terms of the separation agreement, the plaintiff was given title to the marital residence in Shrub Oak, New York, which was encumbered by a first mortgage to the Dime Savings Bank and a second mortgage in the sum of $45,000 to the I.B.M. Interstate Employees Federal Credit Union ("I.B.M. Credit Union"). The debtor is employed by I.B.M. and automatic deductions from his salary are made by I.B.M. in repayment of his $45,000 loan.

5. The separation agreement contains a specific category entitled "Real Property" and provides in relevant part as follows:

3. The wife will be responsible for all the payments on the mortgage and taxes of the premises as well as all ordinary expenses on the premises including utilities and normal upkeep and repairs on the home.

4. The husband will be responsible for the payment of homeowner's insurance on the premises until such time as the wife remarries. If the wife should remarry, then the wife shall be responsible for the payment of homeowner's insurance.

5. Upon the sale of the premises, the wife shall pay the husband the sum of Forty-five Thousand ($45,000.00) Dollars from the net proceeds of the sale. The husband agrees to apply so much of said Forty-five Thousand ($45,000.00) Dollars to fully satisfy the I.B.M. Credit Union Realty Loan which the husband has on the premises. The husband agrees not to borrow additional money from the I.B.M. Credit Union which would create an indebtedness of greater than Forty-five Thousand ($45,000.00) Dollars.

6. It should be noted that the separation agreement does not require the debtor to make any payments to the I.B.M. Credit Union in reduction of the second mortgage. Apparently the parties assumed that I.B.M. would continue to deduct such payments automatically from the debtor's salary which, in fact, was done until the debtor filed his bankruptcy petition.

7. Another category contained in the separation agreement is entitled "Debts". Included in this category is the following provision:

3. The parties agree to forthwith surrender and cancel all credit cards and charge accounts presently outstanding upon which the other would, is or may become liable.

The husband shall be responsible for the following obligations:

| | |
|---|---|
| Sears | $ 556.11 |
| NBW (Visa) | 2017.57 |
| NBW | 1330.00 |
| CITIBANK | 1300.00 |
| Read's | 460.00 |

The wife shall be responsible for the following obligations:

| | |
|---|---|
| Mortgage | $ 530.00/monthly |
| Read's Bedding | 327.00 |

8. The separation agreement also contains a caption entitled "Maintenance and Child Support". Pursuant to the terms under this caption, the debtor agreed to pay the plaintiff $100 per week for support and maintenance until her death or remarriage. The separation agreement provides that if the marital residence is sold, the debtor agrees to pay the plaintiff an addi-

tional $200, per month for a total of $300 per month.

9. The separation agreement also contains a child support provision pursuant to which the debtor is required to pay to the plaintiff the sum of $800 per month until the emancipation of their minor children. The debtor is also obliged to pay 50 percent of the expenses of the college education for the children.

10. When the separation agreement was signed both the debtor and the plaintiff were employed, which employment has continued to the present time.

11. The plaintiff is jointly liable with the debtor for the repayment of the $45,000 debt to the I.B.M. Credit Union, which is secured by a second mortgage on the marital residence. She signed the mortgage note as a borrower with the debtor on September 5, 1984.

12. The plaintiff states that she is also jointly liable with the debtor on the consumer and credit card obligations to Chase Manhattan Bank, (which has acquired NBW) and to J.C. Penney Co., Inc. The plaintiff asserts that the J.C. Penney Co., Inc., debt is also embraced under the debtor's assumption of consumer debts in the separation agreement because of his indemnification with respect to these joint debts.

13. The debtor's obligation to the I.B.M. Credit Union was expressed in the separation agreement in the context of a property settlement under the caption "Real Estate", which immediately preceded the caption "Division of Property". If the marital residence should be sold, the debtor would be entitled to receive from the net proceeds the sum of $45,000, in exchange for which he agreed to apply so much of the $45,000 as is necessary to satisfy the I.B.M. Credit Union loan and second mortgage. At present, the marital residence has not been sold. In the event that the debtor terminated his employment with I.B.M. and thereby prevented any further automatic deductions from his salary in payment of the loan, both the plaintiff and the debtor would continue to be jointly liable under the second mortgage note. The separation agreement does not contain any assumption of this obligation by the debtor. Thus, there is no promise by the debtor in the separation agreement to pay the I.B.M. Credit Union loan that could be regarded as an assumption of a matrimonial obligation in the nature of alimony, maintenance or support. The debtor's obligations for alimony, maintenance or support are expressly provided for in the separation agreement under the separate caption entitled "Maintenance and Child Support".

14. There is no evidence to support the plaintiff's contention that the division of debts between the plaintiff and the debtor pursuant to the provisions in the separation agreement captioned "Debts" constituted an assumption by the debtor of nondischargeable obligations in the nature of alimony, maintenance or support. Each party assumed responsibility for specific debts in stated amounts. The debtor's responsibility was to continue regardless of the plaintiff's death or remarriage. There was no proof that any of the debts that existed on September 9, 1985, when the separation agreement was signed, had any relationship to the plaintiff's requirements for support or child support. The division of obligations simply reflects certain debts which each of the parties agreed to assume based upon the property settlement arrived upon by them.

### DISCUSSION

The crucial issue in this case is whether or not certain obligations of the debtor, which are referred to in a separation agreement with the debtor's former wife, and which are not payable directly to her, are nondischargeable under 11 U.S.C. § 523(a)(5)(B), which excepts from discharge payments:

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or other order of a court of record or property settlement agreement, but not to the extent that—

     *     *     *     *     *     *

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

■ The fact that a debtor may owe an obligation to a third party does not preclude a determination that such debt might be regarded as an indirect payment to the debtor's spouse in the nature of alimony, maintenance or support. *Long v. Calhoun* (*In re Calhoun*), 715 F.2d 1103 (6th Cir. 1983) (assumption of joint debts); *Pauley v. Spong* (*In re Spong*), 661 F.2d 6 (2d Cir.1981) (undertaking to pay attorneys' fees). However, in the instant case, the separation agreement which the parties signed does not contain any promise by the debtor that he would pay or assume full responsibility for the $45,000 second mortgage loan to the I.B.M. Credit Union. The separation agreement imposes a contingent obligation on the plaintiff wife to pay $45,000 to the debtor in the event the marital residence is sold, in which event the debtor agrees to satisfy the I.B.M. Credit Union loan in full. In a subsequent portion of the separation agreement, under the caption "Maintenance and Child Support", the separation agreement provides that when and if the marital residence is sold, the husband agrees to pay the wife for her support and maintenance, the sum of $300 per month, which is $200 per month more than originally provided under the agreement. The plaintiff's right to receive the additional $200 for maintenance and support is conditioned only on the sale of the marital residence and does not depend upon whether or not the debtor husband made any payments towards the $45,000 I.B.M. Credit Union loan. Thus, the debtor's responsibility for the I.B.M. Credit Union loan exists independently of the separation agreement and was not assumed by him under such agreement.

It might be argued that the separation agreement should be construed as containing an implied promise by the debtor to assume full responsibility for the $45,000 I.B.M. Credit Union second mortgage loan. Even if this were the case, such an implied promise to pay the second mortgage debt

would not be regarded as in the nature of alimony, maintenance or support, but as a dischargeable property settlement.

■ Whether or not a debt is a support obligation or part of a property settlement is a question of federal bankruptcy law and not state law. *Long v. West* (*In re Long*), 794 F.2d 928, 930 (4th Cir.1986); *Shaver v. Shaver*, 736 F.2d 1314 (9th Cir. 1984); *Long v. Calhoun* (*In re Calhoun*), 715 F.2d at 1107; *Williams v. Williams* (*In re Williams*), 703 F.2d 1055 (8th Cir. 1983); *Pauley v. Spong* (*In re Spong*), 661 F.2d at 9; *In re Bedingfield*, 42 B.R. 641 (S.D.Ga.1983). There is no federal law of domestic relations. *DeSylva v. Ballentine*, 351 U.S. 570, 580, 76 S.Ct. 974, 980, 100 L.Ed. 1415 (1956). The complaining spouse has the burden of establishing that an obligation is nondischargeable on the ground that it is actually in the nature of alimony, maintenance or support, because the concept of dischargeability under 11 U.S.C. § 523 must begin with the assumption that dischargeability is favored under the Bankruptcy Code. *Tilley v. Jessee*, 789 F.2d 1074 at 1077 (4th Cir.1986); *Long v. Calhoun* (*In re Calhoun*), 715 F.2d at 1111. In determining whether or not an obligation is designed for the support of a former spouse, the court must look beyond the separation agreement to the intent of the parties and to the substance of the obligation. *Long v. West* (*In re Long*), 794 F.2d at 930; *Tilley v. Jessee*, 789 F.2d at 1077; *Shaver v. Shaver*, 736 F.2d at 1316. The mere fact that the debtor was responsible for the payment of the $45,000 I.B.M. Credit Union second mortgage loan does not mean that this obligation was in the nature of alimony, maintenance or support. Obviously, every payment by one former spouse of a joint obligation indirectly contributes to the support of the other former spouse to the extent that the latter is relieved of payments and thus has more funds available for other purposes, including support needs. *See Long v. Calhoun* (*In re Calhoun*), 715 F.2d at 1108.

■ The debtor's obligation to pay the $45,000 second mortgage and the consumer

debts which he assumed continues regardless of his former spouse's death or remarriage. Conversely, the plaintiff spouse's obligation under the separation agreement to pay $45,000 to the debtor in the event she sells the marital residence continues even if she remarries before the sale. Thus, the repayment of the $45,000 I.B.M. Credit Union loan is unrelated to the debtor's marital status or her support needs. The termination of the responsibility for mortgage payments upon the death or remarriage of the former spouse is a factor in determining that the parties intended such obligation to be in the nature of alimony maintenance or support. *Maitlen v. Maitlen (In re Maitlen)*, 658 F.2d 466, 469 (7th Cir.1981). Conversely, the agreement in *In re Woods*, 561 F.2d 27 (7th Cir.1977) (Act case) said nothing about termination of the husband's obligation to pay debts upon death or remarriage, with the result the court concluded that the husband's obligation was in the nature of a dischargeable property settlement. Additionally, the court in the *Woods* case noted that the provision creating the husband's obligation occurred in the midst of provisions allocating property between the parties. In the instant case the debtor's obligation to pay the I.B.M. Credit Union loan, and the division of specific debts of the parties appeared in sections of the separation agreement dealing with divisions of property and debts and not in the section pertaining to maintenance and child support.

The various items that the parties intended to cover in their separation agreement are specifically grouped in separate categories entitled "Separate Residence", "Real Property", "Division of Property", "Pension", "Debts", "Child Custody/Visitation", "Maintenance and Child Support", "Cost of Living Adjustment", "Medical Insurance and Expenses", "Other Insurance", "Legal Representation", "Mutual Release and Discharge of General Claims", "Mutual Release and Discharge of Inheritance Rights", "Reconciliation and Subsequent Matrimonial Decrees", "Modification and Waiver", "Full Disclosure." Additional general provisions are also included in the agreement following the specifically identified subjects. As stated in *Tilley v. Jessee*, 789 F.2d at 1078, the separation agreement exhibited a structured drafting that purported to deal with separate issues in totally distinct segments of the document. Indeed, as one member of the panel observed at oral argument, if this agreement does not reveal an intent to separate alimony from a property settlement, it is virtually impossible to envision a written agreement that could do so.

\*   \*   \*   \*   \*   \*

In sum, we can see nothing in the record which supports a finding that the parties mutually intended an obligation of any nature other than that expressed in their written agreement.

Similarly, in *Bedingfield v. Bedingfield (In re Bedingfield)*, 42 B.R. 641, 649 (S.D.Ga. 1983) the district court said:

Appellee's assumption of the second mortgage on the home was considered a division of property and dischargeable in bankruptcy.

\*   \*   \*   \*   \*   \*

An additional indication that this assumption is a property division is the location of the provision creating the obligation in the divorce agreement. It is contained in the paragraph in which title to the home is transferred to appellant. This paragraph is part of the asset division portion of the agreement.

(Citation omitted). *See also Beckwith v. Wamsley (In re Beckwith)*, 17 B.R. 816 (Bankr.N.D.Ohio 1982) (assumption of second mortgage did not represent an attempt to balance the incomes, but was intended to distribute the obligation for marital debts and was dischargeable).

The debtor's obligation under his assumption of certain debts listed in the separation agreement is also dischargeable as a property settlement. Not only does the division of joint debts appear in a separate paragraph entitled "Debts", but the debtor's obligation to pay these assumed debts continues independently of whether or not his former wife dies or remarries and irrespective of the emancipation of his two

minor children. There was no proof as to whether or not the debts were incurred for living expenses of the family. Moreover, there was no proof as to the debtor's income when the separation agreement was executed, although the plaintiff testified as to the amount of her salary at that time and at the present time. The inferences that can be drawn from the placement of these items in the paragraph dealing with the division of the parties' debts and not in the section dealing with maintenance and support is an additional factor pointing to the fact that a property settlement was intended.

In determining whether obligations in separation agreements represent alimony, maintenance or support as distinguished from property settlements, the courts have usually considered a lengthy list of factors and then point to certain critical factors which are significant with respect to the items in question. *Coverdale v. Coverdale* (*In re Coverdale* ), 65 B.R. 126 (Bankr.M.D. Fla.1986); *Anderson v. Anderson* (*In re Anderson* ), 62 B.R. 448 (Bankr.D.Minn. 1986); *Tosti v. Tosti* (*In re Tosti* ), 62 B.R. 131 (Bankr.D.N.J.1986); *Ramey v. Ramey* (*In re Ramey* ), 59 B.R. 527 (Bankr.E.D. Ark.1986); *Hawkins v. Hawkins* (*In re Hawkins* ), 25 B.R. 430 (Bankr.E.D.Tenn. 1982). Some of these factors were delineated in *In re Ramey*, 59 B.R. at 530–531 as follows:

1. whether the obligation terminates on the death or remarriage of either spouse; *Shaver v. Shaver*, 736 F.2d 1314 (9th Cir.1984), *In re Ingram*, 5 B.R. 232 (Bkrtcy.N.D.Ga., Rome D., 1980), *In re Altavilla*, 40 B.R. 938 (Bkrtcy.Mass. 1984);

2. the characterization of the payment in the decree and the context in which the disputed provisions appear; *In re Salinas*, 2 B.C.D. 864 (D.C.Ore.1976); *In the Matter of Thumm*, 2 B.C.D. 1347 (Bkrtcy.E.D.Wisc.1976); *In re Sledge*, 47 B.R. 349 (D.C.Va.1981);

3. whether the payments appear to balance disparte [*sic* ] income; *Hoover v. Hoover*, 38 B.R. 325 (D.C.Ohio 1983), *In re Seidel*, 48 B.R. 371 (Bkrtcy.Ill.1984);

4. whether the payments are to be made directly to the spouse or to a third party; *In re Nelson*, 16 B.R. 658 (Bkrtcy. M.D.Tenn.1981); *Matter of Holt*, 40 B.R. 1009 (D.C.Ga.1984); *In re Calhoun*, 715 F.2d at 1103; *In re Edwards*, 33 B.R. at 942;

5. whether the obligation is payable in a lump sum or in installments over a period of time; *In re Elder*, 48 B.R. 414 (Bkrtcy.Ky.1985), *Matter of Story*, 36 B.R. 546 (Bkrtcy.Fla.1983), *In re Edwards*, 33 B.R. 942 (Bkrtcy.Ga.1983);

6. whether the parties intended to create an obligation of support; *In re Boyle v. Donovan*, 724 F.2d 681 (8th Cir.1984), *In re Bedingfield*, 42 B.R. 641 (D.C.Ga. 1983), *In re Elder*, 48 B.R. 414 (Bkrtcy. Ky.1985);

7. whether an assumption of debt has the effect of providing the support necessary to insure that the daily needs of the former spouse and any children of the marriage are met; *In re Calhoun*, 715 F.2d 1103 (6th Cir.1983); *But see In re Lewis*, 39 B.R. 842, 846 (Bkrtcy.W.D.N. Y.1984); and

8. whether an assumption of debt has the effect of providing the support necessary to insure a home for the spouse and minor children; *In re Mencer* 50 B.R. 80 (Bkrtcy.E.D.Ark.1985). *But see In re Demkow*, 8 B.R. 554 (Bkrtcy.N.D.Ohio, E.D.1981); *In re Nelson*, 16 B.R. 658 (Bkrtcy.M.D.Tenn.1981), *aff'd in part, rev'd in part*, 20 B.R. 1008 (Bkrtcy.D.C. Tenn.1982).

In the instant case, critical factors which reflect that the parties' division of certain consumer debts listed in the separation agreement represented a property settlement are: (1) The division occurred in the property settlement portion of the separation agreement; (2) The debtor's liability continues regardless of the emancipation of his children or the death or remarriage of his former wife; (3) The former wife's support needs were expressly dealt with in the portion of the separation agreement which addressed maintenance and support; (4) There was no proof that the division of debts was fashioned in order to balance disparate incomes; (5) There was no proof

that the support award was inadequate when the separation agreement was executed and (6) There was no proof as to the standard of living of the parties during their marriage.

The plaintiff's reliance upon the decision in *Lindsey v. Humphres (In re Humphres )*, 29 B.R. 620 (Bankr.N.D.Miss. 1983) (incorrectly cited as 28 B.R. in the brief) is misplaced. In that case there was no express provision in the separation agreement for maintenance and support of the former spouse, as appears in this case. Accordingly, the court concluded that the parties must have intended that the debtor's promise to pay the second mortgage was to be treated as in the nature of alimony. Not only was there no express promise by the debtor in the instant case to continue to pay the second mortgage loan to the I.B.M. Credit Union, but more importantly, there was a specific section in the separation agreement which directly dealt with the specific sums which the debtor was obligated to pay his former spouse as alimony or maintenance and support. The proper test for whether payments are alimony or a property settlement "lies in the proof of whether it was the parties' intention that the payments be for support rather than as a property settlement." *Long v. West (In re Long )*, 794 F.2d at 931. The plaintiff has not satisfied her burden of proof in the instant case of establishing that, in addition to the specific provisions for alimony, maintenance and support, the parties intended the obligations referred to in the separation agreement to constitute additional payments in the nature of alimony, maintenance or support within the meaning of 11 U.S.C. § 523(a)(5)(B).

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

2. The plaintiff has failed to satisfy her burden of proving that the debtor's obligation to pay the $45,000 I.B.M. Credit Union second mortgage loan was assumed by him under the separation agreement or that if assumed by him, that such debt is nondischargeable because it is actually in the nature of alimony, maintenance, or support within the meaning of 11 U.S.C. § 523(a)(5)(B).

3. The plaintiff has failed to satisfy her burden of proving that the debts to N.B.W., which are now asserted by Chase Manhattan Bank, and the debtor's obligation to J.C. Penney & Co., Inc., are nondischargeable because his obligation for such debts is actually in the nature of alimony, maintenance, or support pursuant to 11 U.S.C. § 523(a)(5)(B).

4. The complaint filed by the plaintiff, which seeks a determination or nondischargeability of certain debts pursuant to 11 U.S.C. § 523(a)(5)(B), shall be dismissed.

SETTLE ORDER on notice.