In re Douglas COMBS, Debtor.

Keith LEPPALUOTO, personal representative of the Estate of Carroll B. Leppaluoto, Deceased, Appellant,

v.

Douglas COMBS, Appellee.

BAP No. OR–88–1726–JASR.

Bankruptcy No. 86–03107A.

Adv. No. 87–0582–H.

United States Bankruptcy Appellate Panel, of the Ninth Circuit.

Argued and Submitted Jan. 18, 1989.

Decided July 27, 1989.

Gary M. Bullock, P.C., Portland, Or., for appellant.

Richard J. Parker, Tamblyn & Bush, Portland, Or., for appellee.

## OPINION

Before JONES, ASHLAND and RUSSELL, Bankruptcy Judges.

RUSSELL, Bankruptcy Judge:

After filing his bankruptcy petition and receiving a discharge of his debts, the debtor's former wife died. Thereafter, the debtor brought an action pursuant to 11 U.S.C. § 523(a)(5) seeking to discharge a $47,000 debt for support owed to his former wife. Both the debtor and his former wife's estate filed summary judgment motions. The bankruptcy court granted the debtor's motion and ruled that the former wife's death caused an assignment by oper-ation of law and that the debt, therefore, was dischargeable pursuant to 11 U.S.C. § 523(a)(5)(A). WE REVERSE.

## FACTS

Douglas Combs ("debtor") and Carroll Leppaluoto ("Leppaluoto") were married on June 9, 1971. On June 30, 1980, the Grant County Circuit Court for the State of Oregon entered a final decree dissolving the parties' marriage. At the time of the divorce, the parties were heavily in debt. The debtor and Leppaluoto entered into a stipulated decree of dissolution which gave the debtor primary responsibility and physical custody of the couple's two children, virtually all of the parties' real and personal property, and liability for virtually all of their debts. According to the agreement, Leppaluoto was to receive $600.00 per month as "spousal support" for a period of 121 months, commencing June 1, 1981.

The debtor filed a Chapter 7 petition in November of 1986. In April of 1987, the debtor received an order discharging all of his debts, except for those debts which were declared nondischargeable pursuant to 11 U.S.C. § 523(a)(1), (3), (5), (7), (8), and (9).

Leppaluoto died on May 26, 1987. At the time of her death, the debtor's support payments were in arrears in the amount of $47,492.93. On September 14, 1987, Leppaluoto's estate ("appellant") obtained an order from the Grant County Circuit Court requiring the debtor to appear and show cause why an order in the amount of the arrearages should not be entered against the debtor. Thereafter, the debtor filed a complaint on March 4, 1988, to discharge his spousal support payments. The matter was removed from the state court to the bankruptcy court for a determination of whether the debtor's obligation to pay the arrearages in Leppaluoto's spousal support should be discharged as a "property settlement."

On April 6, 1988, Leppaluoto's estate filed a motion for summary judgment against the debtor's claim of dischargeability of spousal support. On April 27, 1988, the debtor responded to the summary judg-

ment motion and filed his own motion for summary judgment, asserting that the debt should be discharged because it was a property settlement, and not spousal support. A hearing on the summary judgment motions was held on May 2, 1988. At that hearing, the debtor raised for the first time the issue of dischargeability of alimony due to an assignment. He argued that because his former wife had died, the debt owed her was a dischargeable assignment to her estate by operation of law.[1] He additionally argued that the obligation denominated as "spousal support" in the divorce decree was actually in the nature of a property settlement, and thus dischargeable. In light of these arguments, the court granted the parties additional time to file supplemental memoranda on the issue of the assignment. After having been fully briefed on the issue, the court determined that it was unnecessary to formally amend the complaint to specifically include an allegation of assignment.

After reviewing the supplemental memoranda, the court granted the debtor's motion for summary judgment and ruled that Leppaluoto's death caused an assignment by operation of law and thus the debt was dischargeable pursuant to 11 U.S.C. § 523(a)(5)(A). In its Memorandum Opinion, the court found that it was unnecessary to reach the issue of whether the spousal support was in the nature of alimony or a property settlement. However, the court did state that "if it were necessary to reach the question, the court would probably find the spousal support dischargeable." A judgment discharging the debt owed to Leppaluoto's estate was entered on July 12, 1988. On July 14, 1988, Leppaluoto's estate timely filed its amended Notice of Appeal of the granting of the debtor's summary judgment motion and the denial of its summary judgment motion.

**1.** Section 523 provides in pertinent part:
(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce de-

## ISSUES

1. Whether the bankruptcy court erred in applying the facts in existence on the date of the dischargeability hearing, and not the date of the filing of the bankruptcy petition, for purposes of determining dischargeability.

2. Whether the court committed reversible error when it characterized the payments under the divorce decree as money owed on a property settlement, and not spousal support.

## STANDARD OF REVIEW

■ A bankruptcy court's grant of summary judgment is reviewed *de novo*. *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir.1986); *In re Schuman*, 81 B.R. 583, 585 (9th Cir. BAP 1987). Whether a bankruptcy court determines the dischargeability of a debt for spousal support on the facts in existence on the date of the dischargeability hearing or on the filing date is a question of law subject to *de novo* review. *See In re Pizza of Hawaii*, 761 F.2d 1374 (9th Cir.1985).

## DISCUSSION

A. *Operative Date for Determining Discharge*

■ Bankruptcy Code section 523 provides that an individual debtor is not discharged from any debt to a spouse, former spouse or child for alimony, maintenance or support of such spouse or child unless "such debt is assigned to another entity by operation of law or otherwise." 11 U.S.C. § 523(a)(5)(A). The dispositive issue before this Panel, therefore, is which date the court should use to determine whether an assignment by operation of law has occurred.

cree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—
(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise. . . .

On appeal, Leppaluoto's estate asserts that the relevant time period for determining dischargeability is the date the debtor filed his bankruptcy petition. Accordingly, since Leppaluoto was alive when the debtor filed his petition, her estate argues that her interest in the spousal support payments had not yet been assigned. Therefore, Leppaluoto's estate contends that the debt for $47,492.93 is nondischargeable.

Leppaluoto's estate additionally contends that using the date of the petition as the operative date is also consistent with congressional intent and promotes finality in bankruptcy decisions. It asserts that the date of petition would act as the best operative date because numerous other determinations in a bankruptcy case rely on this date and that there is generally an historic preference for using the filing date. *See In re Hazen*, 19 B.R. 545, 548 (Bankr.D. Idaho 1982). *See also In re Williamson*, 804 F.2d 1355 (5th Cir.1986); *In re Miller*, 31 B.R. 75 (Bankr.D.Neb.1983); *In re Sivley*, 14 B.R. 905 (Bankr.E.D.Tenn.1981). Finally, Leppaluoto's estate argues that the bankruptcy court's decision, if affirmed, would defeat the reasonable expectations of the parties and would encourage other debtors to delay making spousal support payments in light of the possibility that a former spouse might pass away in the future.

The debtor, on the other hand, argues that the controlling date for determining dischargeability of the "spousal support" payments is the date of the dischargeability hearing. Accordingly, since Leppaluoto died prior to the dischargeability hearing, he argues that her rights in the support payments had been assigned, by operation of law, to her estate. The debtor additionally contends that the policy of "fresh start" and the fact that the children reside with him mandate the affirmance of the bankruptcy court's decision that the debt is dischargeable. He asserts that it was Congress' intent to offer a limited exception to the "fresh start," but only so long as the exception from discharge would not have a

detrimental impact on the dependents of the debtor.

The debtor further asserts that while many legal consequences are tied to the date of petition, others have different time frames. For example, he argues that since courts apply the *law* in effect on the date of dischargeability decisions, *see In re Reynolds*, 726 F.2d 1420, 1422 (9th Cir. 1984), they should also apply the *facts* in existence on that same date. Thus he contends that Leppaluoto's estate does not have standing to make the claim for the spousal support owing. Finally, the debtor argues that his position is supported by cases which hold that the court should examine both the present needs of a former spouse and the debtor's current ability to pay. *See In re Singer*, 787 F.2d 1033 (6th Cir.1986); *In re Warner*, 5 B.R. 434 (Bankr.D.Utah 1980).[2]

The bankruptcy court held that the "spousal support" claim was dischargeable because it was asserted by the decedent's personal representative, whose right to collect on the debt arose by operation of law. The court based its decision on the facts in existence on the date of the dischargeability hearing. Without citing any specific case authority, the court stated that:

> There is a split of authority on the appropriate date for determining dischargeability. The court believes that the better reasoned view is that the determination of the applicability of section 523(a)(5)(A) should be made as of the hearing on dischargeability. The Code intended to provide a fresh start to the debtor. An overriding policy consideration resulted in excepting spousal support from discharge. Where the ex-spouse no longer has a need for the support, as shown by the assignment of the support obligation, the policy favoring a fresh start for the debtor regains precedence, and the obligation becomes dischargeable.

> Using the date of the hearing on dischargeability to determine the applicability of Section 523(a)(5)(A) furthers the

---

2. These cases, however, may be relevant to the ultimate resolution of whether the obligation is alimony or a property settlement, but they are not helpful in determining the issue at hand.

rehabilitation of the debtor without compromising the policy behind protection of spousal support obligations.

The law is not well-settled on whether, for purposes of dischargeability, courts should apply the facts in existence on the date of the dischargeability hearing or the facts as they existed when the bankruptcy petition was filed. However, although there is little case law to help resolve this issue, at least one case has held that the court must apply the facts which existed at the time the bankruptcy petition was filed in order to determine if a debt is dischargeable. *See In re Tessler,* 44 B.R. 786, 788 (Bankr.S.D.Cal.1984).

The facts in *Tessler* are similar to those in the instant case. In *Tessler,* the debtor owed his former wife $1,377 in spousal support when he filed his Chapter 7 petition. He had been ordered to pay this money to his former wife's attorney as part of his responsibility to provide child and spousal support. His former wife subsequently filed her own Chapter 7 petition, and both parties eventually received their discharge. The debtor's former wife's attorney thereafter sought to have the spousal support obligation declared nondischargeable. In response, the debtor argued that his former wife's filing of her Chapter 7 petition caused a change of circumstances, i.e., the wife was no longer liable to her attorney for the fees if her former husband did not pay them, and he should therefore be released from his obligation to make the payment. Mr. Tessler, like the instant debtor, sought to balance his right to a "fresh start" against his obligation of familial support. The *Tessler* court rejected the debtor's arguments and instead ruled that his obligation was nondischargeable. *Tessler,* 44 B.R. at 788.

Although the *Tessler* case involved obligations due an attorney, the court noted that it will look to the debts as they existed on the date the petition was filed for purposes of discharge. The court stated that:

> [s]ince in [the debtor's] case we look to his debts as they existed as of the date of the order for relief, then the obligation in

question here is clearly nondischargeable for on that date the debtor owed it to the plaintiff and his ex-wife was still responsible for the payment of these fees.

The date of petition is seen as the critical date for several other determinations in a bankruptcy case. For example, it is on that date when the debtor's rights in exempt property are defined, despite a later change of circumstances. *In re Williamson,* 804 F.2d 1355 (5th Cir.1986); *In re Sivley,* 14 B.R. 905 (Bankr.E.D.Tenn.1981). In determining the dischargeability of child support obligations and a change of law, the court in *In re Hazen,* 19 B.R. 545, 548 (Bankr.D.Idaho 1982), stated that:

> ... the statement of general philosophy ... that substantive rights are fixed on the date of the filing of the petition for relief, has been adopted by Congress as the overriding principle under the Bankruptcy Code.

*Hazen,* 19 B.R. at 548. *See Ohio v. Kovacs,* 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985); *White v. Stump,* 266 U.S. 310, 45 S.Ct. 103, 69 L.Ed. 301 (1924); *In re Brayman,* 51 B.R. 139, 142 (Bankr.D. Mass.1985). The court in *Heldt v. State of South Dakota,* 17 B.R. 519, 521 (Bankr.D. S.D.1982), further stated that:

> [a] fundamental principle of bankruptcy law is the filing of a bankruptcy petition triggers the automatic stay which fixes a creditor's rights in the debtor's property, From this principle, it can be gleaned Congress intended the bankruptcy filing date to be the guidepost in establishing a person's rights in bankruptcy. The date an adversary matter is commenced is irrelevant.

It is true that while many legal consequences are tied to the filing date, others have different time frames. For example, under § 547(b)(4)(A) and (B), certain preferences must have occurred either within ninety days or one year prior to the filing date. Additionally, some dischargeability subsections have no time limits. Moreover, as a general rule, the court must apply the law in effect on the date of its dischargeability decision. Such time frames, however, appear to be exceptions to the general

philosophy of establishing parties' rights as of the date of the filing.

We believe that the rights of the parties, in particular, the debtor's former wife's right to the support payments owing, were established according to the facts in existence at the time the debtor filed his Chapter 7 petition. Such a determination is consistent with the policy of using the filing date as a "guidepost" in establishing a party's rights in bankruptcy. Accordingly, since the debtor's former wife was still alive when the debtor filed his petition, her right to the support payments had not yet been assigned by operation of law. Therefore, we reverse the decision of the bankruptcy court and hold that the debt, to the extent it is for spousal support owed to the debtor's former wife, is nondischargeable.[3]

### B. Characterization of the Monthly Payments

Paragraph VI of the decree dissolving the marriage between the debtor and Leppaluoto, as approved by the Grant County Circuit Court, states the following:

> The petitioner [debtor] shall pay to the respondent [Leppaluoto], through the Clerk of the Court, the sum of $600.00 per month as *spousal support* for a period of 121 months, the first payment to be paid on or before June 1, 1981 (emphasis added).

At the dischargeability hearing, the bankruptcy court issued a purely advisory opinion which implied that on remand it might find that the monthly payments were part of a property settlement and not spousal support. The court wrote that:

> [i]f it were necessary to reach the question, the court would probably find the "spousal support" dischargeable. The fact that the payments were for a fixed period of time, and did not terminate upon remarriage or death of the spouse, indicates a property division. The disproportionate award of marital assets to the

plaintiff also suggests that the payments were intended to equalize the distribution.

The court indicated that it was not necessary to reach the issue of whether the obligation was spousal support or a property settlement because it found the obligation to be dischargeable on other grounds. However, since we hold that the operative date for determining dischargeability is the date of the petition and that Leppaluoto's right to the payments, therefore, was not assigned until her death, which occurred after the filing date, it now becomes necessary to determine whether the payments were spousal support or part of a property settlement.

■ When it granted the debtor's summary judgment motion and denied Leppaluoto's estate's summary judgment motion, the bankruptcy court had before it the entire record and all of the relevant facts. Such record and facts also have been placed in the record on appeal. This panel, therefore, is in an appropriate position to determine whether the payments were spousal support or a property settlement.

■ In order to determine whether a debt is a nondischargeable spousal support obligation or a dischargeable property settlement, the court must ascertain the intention of the parties at the time they entered in their stipulation agreement, *In re Yeates*, 807 F.2d 874, 878 (10th Cir.1986), and not the current circumstances of the parties. *In re Spurgeon*, 80 B.R. 477, 478 (W.D.Mo.1986). The court should look to the substance of the obligation in the agreement, *In re Shaver*, 736 F.2d 1314, 1316 (9th Cir.1984); *In re Freyer*, 71 B.R. 912, 916 (Bankr.S.D.N.Y.1987), and generally should disregard labels and titles. *Matter of Campbell*, 74 B.R. 805, 809 (Bankr.M.D.Fla.1987); *Matter of Heverly*, 68 B.R. 21, 22 (Bankr.M.D.Fla.1986). If the provision's intended function is to pro-

**3.** We recognize the fact that, in the instant case, the debtor's former spouse has died and that her estate, and not she, personally, is entitled to receive the money owed by the debtor. Nevertheless, because we hold that the filing date is the operative date in determining the discharge-

ability of a debt, the former spouse, who was alive and needed support on the filing date, was entitled to those support payments. Therefore, due to the assignment by operation of law, her estate is entitled to those payments.

vide a necessity of life, it is ordinarily held to be nondischargeable maintenance support. *Matter of Quinn,* 44 B.R. 622, 624–25 (Bankr.W.D.Mo.1984).

■ In interpreting a decree, and even in deciding if it is ambiguous, the court should consider the surrounding circumstances and all other relevant incidents bearing on the parties' intent when they entered into the decree. Parol evidence is admissible to clarify the parties' intent. *See In re Shaver,* 40 B.R. 964, 968 (D.Nev. 1983), *aff'd,* 736 F.2d 1314 (9th Cir.1984). A significant factor is whether there are other provisions in the agreement separate and distinct from the provision in question which is designated as support payments and which terminate at a specific date or upon a specific event. *In re Smith,* 61 B.R. 742, 745–46 (Bankr.D.Mont.1986).

■ Bankruptcy courts have employed various factors to determine the intent of the parties of an ambiguous divorce decree. Some of these factors include:

1. The label given to the payments;

2. The context or location of the disputed provision in the decree;

3. The parties' negotiations and understanding of the provision;

4. Whether a lump sum or periodic monthly payments were provided for;

5. The relative earning power of the parties;

6. Whether the recipient spouse would be entitled to alimony under state law;

7. Whether interest accrues on the entire debt or only on the monthly payments past due; and

8. Whether the debtor's obligation of payment terminates on the death or remarriage of the recipient, or on the death of the debtor.

*See In re Freyer,* 71 B.R. 912, 918 (Bankr. S.D.N.Y.1987); *In re Anderson,* 62 B.R. 448, 454–55 (Bankr.D.Minn.1986); *In re Ramey,* 59 B.R. 527, 530–31 (Bankr.E.D. Ark.1986). *See also In re Shaver,* 736 F.2d

1314, 1316 (9th Cir.1984); *In re Albin,* 591 F.2d 94, 97 (9th Cir.1979).

■ In the instant case, the facts and the record clearly indicate that the parties intended the payments to be spousal support. First, although not determinative in and of itself, the parties specifically elected to designate the debt as "spousal support." In order for the debtor to receive tax benefits under then-existing tax laws, the obligation had to be classified as spousal support and the debtor was required to make payments for a minimum of 120 months. The debtor's attorney specifically negotiated the spousal support classification and the 121 month payment schedule in order to ensure that the debt would not be misconstrued as being part of a property settlement.[4] And although the debtor obtained the tax benefits for making spousal support payments, Leppaluoto was required to report such payments as spousal payments received and thus income.

Second, all of the parties present during the negotiations and when the court approved the decree, including Leppaluoto's counsel, father, brother, and mother, verified in sworn declarations that the parties intended the obligation to be considered spousal support. The debtor, who was not present and not involved in the negotiations, has not provided any evidence other than his current statements that, although not disclosed to anyone, he desired the payments to be considered part of a property settlement. Further, there is no indication that his attorney conducted negotiations intending the payments to be a property settlement, and correspondence between the parties' counsel indicate that the payments were intended to be spousal support.

Third, the record and evidence relating to the dissolution agreement indicate that at the time of the divorce, the parties were heavily in debt and, for all practical purposes, had no equity to divide because their assets exceeded their liabilities. In order to simplify their financial predicament, they agreed that the debtor would keep all personal property in his possession and all

---

4. Letters between the parties' counsel during the negotiations indicate that Leppaluoto was seeking payments over 15 years.

of the rights in the parties' real property. However, he also would be liable for all of the parties' debts. Leppaluoto merely was able to keep the personal property in her possession. Thus, the debtor's assertion that the payments were a property settlement is misguided because the dissolution agreement left him and Leppaluoto in approximately the same financial condition: she had virtually no assets and no liabilities, while his assets, at best, equalled his liabilities. Therefore, the only realistic conclusion is that the payments were intended to be spousal support because it is simply not logical for the debtor to pay $72,600 to his former wife over a period of 121 months to divide property whose value to the parties at the time of the dissolution was negligible or negative.

Fourth, at the time of the divorce, Leppaluoto was trained, but not employed, as a legal secretary. The debtor was employed as an attorney. The presumably significant disparity in their income earning capabilities, therefore, further substantiates the position that the payment obligations were intended to be spousal support and not a property settlement.

In addition to the above, it is unrefuted that Leppaluoto would have qualified to receive spousal support under state law. Moreover, the interest on the support payments to Leppaluoto accrued on each payment as it became due rather than on the total sum of payments from a single date. Finally, the record indicates that the debtor did not attempt to have this obligation discharged, as a property settlement or otherwise, at the time he received his general discharge. He only attempted to do so after his former wife died and her estate attempted to collect on the $47,492.93 in arrears.

In light of the foregoing, and after closely examining all the relevant factors, we hold that the debtor's obligation to pay Leppaluoto $600.00 per month for 121 months constitutes spousal support and therefore is nondischargeable. We reverse the bankruptcy court's denial of Leppaluo-

to's estate's motion for summary judgment and hold that there are no genuine issues of material fact and that Leppaluoto's estate is entitled to prevail as a matter of law because the undisputed evidence overwhelmingly indicates that the dissolution agreement provided for spousal support.

## CONCLUSION

We hold that the operative date for determining the facts relating to the dischargeability of an obligation is the date of the filing of the bankruptcy petition, and not the date of the dischargeability hearing. We also hold that the debtor's obligation to pay his former wife $600.00 per month for 121 months constitutes spousal support. Therefore, we reverse the bankruptcy court's granting of summary judgment in favor of the debtor and hold that the court erred in not granting summary judgment in favor of Leppaluoto's estate. This matter is remanded to the bankruptcy court to enter a judgment determining the debt for spousal support payments to be nondischargeable.[5]

JONES, Bankruptcy Judge, concurring and dissenting.

In this case, the Debtor brought a § 523(a)(5) action after the case was closed to determine the dischargeability of spousal support arrearages. The court below determined that the debt was dischargeable on the set of facts in existence on the date of the hearing. Due to the death of the Debtor's former spouse, the right to the arrearages was assigned by operation of law to her estate. I agree with the majority that since this assignment occurred postpetition, and moreover after the entry of discharge, the arrearages are not dischargeable.

However, I respectfully dissent from the majority's decision to reverse the lower court's denial of summary judgment on the issue of whether the arrearages were part of a property settlement. While the trial judge did state that in his opinion the debt is properly characterized as a property set-

---

**5.** At oral argument before this Panel, the parties indicated that a portion of the judgment has already been satisfied and they agreed to resolve among themselves what amount is still owed.

If the parties are unable to reach an agreement, then the bankrutpcy court shall determine the remaining amount owing.

tlement rather than alimony, he did not fully consider or even rule on that issue. Rather, the judge expressed no ruling on either party's motion for summary judgment on this issue. In addition, the record clearly shows that the focus of the hearing and the supplemental briefing was on the assignment issue alone. Because the trial court did not fully explore the characterization of the arrearages issue, I dissent from the majority's holding that the court erred in not granting summary judgment in favor of the former spouse's estate on grounds that the arrearages constitute spousal support.[1] This issue should first be explored *and* ruled upon by the trial court.

In sum, I concur with the majority that the assignment issue should be determined as of the date the petition was filed, rather than at a subsequent hearing. However, I disagree with the majority's decision to reverse the trial court's denial of summary judgment on the issue of property settlement versus alimony. While the judge below expressed an opinion that the obligation appeared to be a property settlement, he declined to fully consider or rule on that issue. Consequently, I would remand the matter for further consideration.

See also, Bkrtcy., 101 B.R. 628.

---

1. It should be noted, with some irony, that the former spouse's family claims rights to all of the arrearages due her estate and, thus, as the Debt- or has custody of the couple's two children, none of the "support" arrearages will go to the children.