LOGUE *v.* LOGUE

No. 40913 November 17, 1958 106 So. 2d 498

*L. Barrett Jones, Lee B. Agnew,* Jackson, for appellant.

*Barnett, Jones & Montgomery,* Jackson, for appellee.

McGEHEE, C. J.

Sometime prior to January 1953, the appellant Ben O. Logue sued his wife Mrs. Lessie Vines Logue for a divorce. Thereafter, she filed an answer to the bill for divorce, and also a cross bill, in which she sought a divorce from the appellant who was the cross-defendant, on the ground of habitually cruel and inhuman treatment.

On January 29, 1953, the parties to the suit entered into a "separation agreement", whereby they undertook to settle "all property and support questions or difficulties between them" and the agreement recites further that the same is made "in consideration of mutual covenants" therein set forth.

Among other things, the agreement provided that Mrs. Logue "is to have full and complete title to the house and lot located in the City of Jackson at 1103 Manship Street, together with all furnishings now located therein." Upon this trial in 1957 it developed that Mrs. Logue owned the full and complete title to the house and lot in question and that she had purchased the lot through H. C. Bailey, Realtor, by paying in excess of $3,100 therefor, including the $150 earnest money initially paid; that she had paid the contractor who built the duplex on the lot the difference between a loan of $12,000 obtained thereon and the total contract price which was in excess of $14,000. The deed to the lot was made however on August 12, 1947, by Mr. and Mrs. Carlisle to both Ben O. Logue and Lessie Vines Logue, and they conveyed the property on June 18, 1951, to Mrs. Jean Johnston Cain, and on that same date Mrs. Cain conveyed the full title to the appellee herein, Mrs. Lessie Vines Logue.

The separation agreement further provided that the appellant was to pay to the appellee $150 per month

as alimony and support, and that the same was to continue so long as the appellee "does not remarry." Thereafter, upon application of the appellant this monthly allowance was reduced from $150 to $100 per month. Subsequent thereto, Mrs. Logue became married to a Mr. Pence and thereafter the appellant was relieved of the further payment of alimony.

However the separation agreement further provides that the "Party of the First Part (Mr. Logue) agrees to assume the indebtedness now existing on said house and lot located at 1103 Manship Street, Jackson, Mississippi, said indebtedness payable through Wortman & Mann, Inc., Jackson, Mississippi, the payments to be made in monthly installments of $78 each, and the Party of the First Part hereby agrees to pay each and every payment on said indebtedness."

It is to be noted from the last above-mentioned provision of the separation agreement that it does not provide that the assumption and agreement to pay the monthly installments on the indebtedness of $78 should continue "so long as the Party of the Second Part does not remarry." In other words, it was an unqualified assumption of the balance due in monthly installments on the house and lot in question. Moreover, there were substantial considerations moving to the Party of the First Part in the execution of this separation agreement. For instance, the agreement further provided that Mr. Logue was to be given the "full and complete title, right and interest to that certain deed of trust dated February 15, 1946, executed by E. E. Zilish and Wife, Emma W. Zilish," which was duly of record. Further that Mr. Logue was to have full and complete right, title and interest to that certain yacht known as "Emma-Jo" and that his Wife, Mrs. Logue, was to have full ownership of their Cadillac automobile.

On the next day after the execution of the separation agreement, there was a final decree rendered reciting

that Mr. Logue requested leave to withdraw the original complaint which he had filed and to proceed to trial on the cross bill filed by Mrs. Lessie Vines Logue, and after having heard the testimony the trial court granted her a divorce on the ground of habitually cruel and inhuman treatment. Then the decree follows the terms of the separation agreement as to the property that each of the litigants were to thereafter have and own. The recitals of the decree were a complete rescript of the stipulations of the separation agreement entered into by the parties on the day prior thereto, but without any reference being made in the said decree to such separation agreement.

No appeal was taken by the appellant from that decree of January 30, 1953, and it does not appear from the record that there was any collusive agreement between the parties that Mrs. Logue was to obtain the divorce. The separation agreement left the case open to be heard the next day on its merits as to the question of whether or not she was entitled to a divorce, so far as the record before us discloses.

But on the 27th day of March 1956, Mr. Logue filed a petition for the modification of the said decree, and later an amendment thereto. In this petition and amendment he sought to be relieved of the payment of the $78 per month on the deed of trust on the residential property on Manship Street, and he alleged that although Mrs. Logue was sick at the time the alimony of $150 per month was fixed in 1953 that she had subsequently become able to earn a salary of at least $200 per month. However, she was shown to be receiving less rent on her duplex apartments than she was able to receive thereon in 1953. By the amendment to the petition for modification of the decree of January 30, 1953, the appellant sought to have the court require Mrs. Logue reconvey to him his one-half interest in the real property above-mentioned. If he had really owned a

one-half interest in the property the court would have been without authority on January 30, 1953, to have required him to convey such interest to his wife, except for the separation agreement which the court held to be binding on him, and we think that it correctly so held for the reason that the chancellor had a right to take into consideration the separation agreement made on January 29, 1953, which was followed up in the decree of divorce and alimony on January 30, 1953, and that in view of the separation agreement and the failure of the appellant herein to appeal from the decree of January 30, 1953, the trial court was correct in holding that the final decree amounted to a consent decree to the effect that the husband had obligated himself at all events in the separation agreement to pay off the indebtedness in monthly installments that are still owing on the Manship Street residential property, as the same should become due and payable, and the payment of which he had solemnly assumed.

Of course if this agreement to pay the $78 monthly installments of the indebtedness on the real estate had been fixed by the chancellor in the first instance as a part of the alimony to be paid to the wife, then her remarriage would have terminated his obligation to pay the $78 per month, but the chancellor was entitled to take into consideration in determining whether or not the payment of this $78 per month was intended as alimony the fact that the separation agreement expressly provided that the "$150 alimony" should continue "so long as the Party of the Second Part does not remarry", and that these words were not contained in the subsequent provision whereby he assumed to pay the $78 per month. The chancellor denied the appellant any relief on his petition to modify the decree of January 30, 1953, and dismissed the same. Of course if the $78 per month installments had been designated as part of the alimony, as was the $150 per month, the court would

have had jurisdiction and authority, upon proper cause shown, to have modified the allowance of alimony at a subsequent date, but the court was warranted in holding that the appellant was bound by his separation agreement since there were considerations moving to him in connection with the Zilish deed of trust, the yacht, and the amount that he was to pay monthly as alimony, as mentioned therein.

The appellant did testify that although the appellee had cancelled checks showing payment for the real estate, his own monthly income went into the bank account on which she drew the checks, but on the conflicting testimony as to whether or not she paid in full for this property the chancellor should be affirmed.

The appellant also urges that the trial court was in error in overruling his motion to be allowed to reconstitute a withdrawn and lost portion of a part of the pleadings in the original divorce suit. He relies on Section 766, Code of 1942, for his right to reconstitute the pleadings to the extent of substituting a carbon copy of the original bill of the appellant for divorce and the answer thereto, which were voluntarily withdrawn and later lost. Copies offered for substitution were shown to be true and correct copies of the original, but we think that under Section 767, Code of 1942, the chancellor was authorized to proceed with the matter in the absence of the withdrawn portion of the pleadings, and that therefore there was no error committed in the overruling of the said motion of the appellant.

The decree dismissing the bill for modification of the former decree is therefore affirmed.

Affirmed.

*Hall, Arrington, Ethridge* and *Gillespie, JJ.,* concur.