624 So.2d 1001 (1993)
Carolyn Ann MOUNT, Individually, and on Behalf of Robert James Mount, Jr.
v.
Robert James MOUNT, Sr.
No. 91-CA-1028.
Supreme Court of Mississippi.
September 30, 1993.
*1002 W. Eugene Henry, Biloxi, for appellant.
Norman Breland, Breland & Weatherly, Gulfport, for appellee.
En Banc.

ON PETITION FOR REHEARING
PRATHER, Presiding Justice, for the Court:
In this domestic relations case this Court is asked to determine if a property settlement agreement incorporated into the divorce decree has been fulfilled. This Court holds that the husband, Robert James Mount, Sr., did not comply with his property settlement terms, withdraws its former opinion and substitutes this opinion therefor.

I.
Carolyn Ann Mount and Robert James Mount, Sr., were married on November 23, 1961, and divorced on July 17, 1974. At the time of the divorce, the parties had four children ranging in age from three years to eleven years.
At the end of their twelve year marriage in 1974, the Mounts reached an agreement on the division of the marital assets, child custody, and support. The property settlement agreement provided that Mr. Mount was to receive the business and Mrs. Mount was to receive the house debt free. The court ordered that Mr. Mount pay the home mortgage debt. On the date of the divorce decree, Mr. Mount conveyed their house by quitclaim deed to Mrs. Mount and the court ordered Mr. Mount to pay the monthly house note of $161.00. Mrs. Mount was given custody of the four children who were ages 11, 10, 9 and 3 years at the time of the divorce.
In 1990, Mrs. Mount decided to sell her home due to increased maintenance costs and her inability to pay them. Her attorney notified Mr. Mount of the sale and asked that he extinguish the debt that the court ordered him to pay in 1974, or make arrangements to continue to pay the monthly payment directly to Mrs. Mount. Mr. Mount did neither. At the time of the sale of the home, there were two outstanding mortgages. The first mortgage, which Mr. Mount was ordered to pay, had a balance in the amount of $10,142.44, and a second mortgage obtained by Mrs. Mount in the amount of $13,794.15, were *1003 deducted from the sale price of the home which was $66,500.
Mrs. Mount individually, and on behalf of Robert Mount, Jr., her 28 year old adult, disabled son who lives with her, filed this suit to enforce the former court order. She sought reimbursement from Mr. Mount of the balance of the $10,142.44 mortgage she was forced to pay at the time of the sale of her home. In the alternative, Mrs. Mount sought an order requiring Mr. Mount to pay to her $161 per month for as long as the original note would have been payable under its original terms.
At trial of the present suit, both parties testified that their property settlement agreement at the time of their divorce provided that Mr. Mount would receive the business and Mrs. Mount would receive the home debt free. Mr. Mount testified, however, that he understood that if the house was sold in the future, he would receive one-half of the proceeds.

II.
In his bench opinion the chancellor made the following findings:
[T]he consideration was the business for the house, based on the testimony of both people. But yet, [Robert's] memory now is [Carolyn] was supposed to give up half the house when it was sold. Yet when I asked him if half the business proceeds were to go to her when and if it were sold, he said "no, sir." That was his answer, so I can't accept the proposition that he was supposed to get half the proceeds of the house if and when it sold.
It appears to the Court that it was her house, that it was a property settlement and the house was to be hers; and he was doing like any good father would do, he wanted to make sure they had a place to live. He was going to pay the house note as long as they stayed in that house.
Now, the way I see it, I rule that his obligation to pay the house note ceased when she sold the house. That's all that he was required to do was pay the house note. His right also terminated to have anything at all to say about it because he executed a quitclaim deed on July 16, 1974 which ways, in clear language, "I do hereby sell, convey and quitclaim unto Carolyn Ann Mount all my right, title and interest," in and to the home place. He had no interest after that because he has given it to her. Whether it was an inter vivos gift, or whether it was anything else, it's not stated anything other than a sale and a quitclaim unto her connected with the divorce.
And both parties having testified there was a trade of the business for the house, it seems inequitable to the Court to deprive her of the proceeds of the house when we are not depriving him of his one-half interest in the business. It's just that simple. There was an equitable distribution between the parties, and the Court is not going to disturb that equitable distribution. That was their own work.
When the chancellor signed the judgment entered on this bench opinion, it stated:
The Court further finds that under the terms of the decree of July 17, 1974, that the Defendant's obligation was to pay the outstanding note due to Fireman's Fund Mortgage Corporation. The Court finds that by the terms of the sale of said property in December of 1990, that the note to Fireman's Fund was paid off and that the mortgage was cancelled. The Court finds that the Defendant's obligation to pay the Fireman's Fund note ceased as of the time the house was sold in December of 1990 as did his right to object to the sale of the house.
... .
The Court finds that since the Defendant's obligation to pay the house note ceased, that there is no contempt on the part of the Defendant, since he met this obligation up to and until the house was sold. Therefore, the Plaintiff's request for attorney's fees and requests to find the Defendant in contempt is hereby denied. The Court further denies the Plaintiff's request to modify the Order of July 17, 1974, so as to order the Defendant to reimburse the Plaintiff for the balance of the mortgage note, paid by her, upon the sale of said real property or, in the alternative, *1004 to order the Defendant to pay the Plaintiff the sum of $161.00 per month, the amount of the Fireman's Fund mortgage, for so long as said note would have been due and payable under its original terms.
Mrs. Mount appeals from this adverse judgment, assigning the following issue:

DID THE TRIAL COURT ERR IN RULING MR. MOUNT'S OBLIGATION TO SATISFY THE MORTGAGE NOTE TERMINATED WHEN IT WAS PAID OFF BY MRS. MOUNT?

III.
Mrs. Mount cites the equitable principle of unjust enrichment, as well as the inability of the court to modify a property settlement agreement, absent fraud, in support of her position that the chancellor erred in relieving Mr. Mount of payment of the balance due on the deed of trust.
Mrs. Mount's testimony supported her position that she was forced to sell her home because of economic conditions. At the time of the divorce, she needed a large home for herself and her four children. Since then, one son died, one son was emancipated, and the 20 year old daughter went to college. At the time of the sale, only Mrs. Mount and her 28 year old adult, disabled son lived there, although the daughter was still there from time to time. The heating and air conditioning in the house did not work and Mrs. Mount's 1977 Pontiac, her only means of transportation, needed to be replaced because the engine and the transmission had both stopped working. To maintain herself and her children, she had borrowed over $13,000 from her credit union, secured by a second mortgage on her home. Her mentally disabled son was in her care and his support required more money than his monthly disability checks provided.[1] Mrs. Mount is still paying her son's medical bills not covered by insurance that were incurred before he was diagnosed as having a mental disorder.[2] The daughter has received one Pell Grant for college, but was denied another because the capital gain on the sale of Mrs. Mount's home put the family into a higher tax bracket. Mrs. Mount's income from Keesler Air Force Base of $465 bimonthly is supplemented by working as a waitress on weekends (averaging $140 per month) and as a secretary for a union ($50 per month). She is presently renting an apartment for herself, son, and daughter for $520 per month. The continued payment of the $161 house note by Mr. Mount will help defray her expenses.
Mr. Mount's position is that he was ordered to pay "the mortgage payment" and that when Mrs. Mount voluntarily paid it off, his liability ended. The chancellor acknowledged Mr. Mount's interest in providing his children with a home. However, the chancellor held that his liability to pay the mortgage ended when the mortgage was satisfied by Mrs. Mount.

IV.
The chancellor's findings will not be disturbed unless he was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Faries v. Faries, 607 So.2d 1204, 1208 (Miss. 1992); Tinnin v. First United Bank of Miss., 570 So.2d 1193, 1194 (Miss. 1990). Especially on issues arising out of a divorce, the chancellor's findings will not be reversed unless manifestly wrong. Tilley v. Tilley, 610 So.2d 348, 351 (Miss. 1992).

V.
In Logue v. Logue, 234 Miss. 394, 106 So.2d 498 (1958), a husband and wife entered into a separation agreement which granted the wife full title to the marital home. The husband agreed to assume the $78 monthly note on the home. After the couple's divorce, the wife remarried and the husband terminated his payment of the house note. *1005 This Court found that the husband had assumed the mortgage payments in order to equalize the property settlement between the husband and the wife. Because there was no provision in the separation agreement which provided for the termination of the monthly house payments upon the wife's remarriage, the husband had made an "unqualified assumption of the balance due." Id. at 500.
There is no difference between Logue and the instant case. The chancellor approved the parties' agreement as to marital assets  Mr. Mount got the business and was ordered to pay off the house mortgage; Mrs. Mount got the house free of debt and in fact got a quitclaim deed to evidence their agreement. Whether this award is determined to be a property settlement or lump sum alimony, it may not be modified absent fraud or a contractual provision allowing modification. Bowe v. Bowe, 557 So.2d 793, 795 (Miss. 1990); Holleman v. Holleman, 527 So.2d 90, 92 (Miss. 1988); East v. East, 493 So.2d 927, 931-932 (Miss. 1986); Maxcy v. Maxcy, 485 So.2d 1077, 1078 (Miss. 1986); McKee v. McKee, 418 So.2d 764 (Miss. 1982). There was nothing in the Mount's agreement that mentioned the future sale of the house. From the date of the final judgment, Mr. Mount became contractually obligated to pay the mortgage in full and Mrs. Mount became vested in her right to be free of the mortgage. Bowe, 557 So.2d at 795; Holleman, 527 So.2d at 92; Maxcy, 485 So.2d at 1078; Wray v. Wray, 394 So.2d 1341, 1345 (Miss. 1981); Stone v. Stone, 385 So.2d 610, 614 (Miss. 1980); Bunkley and Morse's Divorce and Separation in Mississippi, Section 6.07.
This Court holds that the chancellor committed manifest error when he modified the property settlement agreement and relieved the husband of the $10,142.44 debt, thereby reducing Mrs. Mount's vested right pursuant to the property settlement agreement by that amount. This Court reverses the chancellor and reinstates the monetary obligation of Robert James Mount, Sr. to pay the sum of $10,142.44, plus interest at the contractual rate. The Court renders on the alternative prayer of Mrs. Mount to order the defendant to pay to Carolyn Mount the sum of $161 per month for as long as the original note would have been due and payable under its original terms. By the original mortgage terms, a total of $161 per month from the date of November 30, 1990, including interest at the contract rate, is now due from Mr. Mount. Mrs. Mount is entitled to a judgment in this amount, plus interest at the statutory rate. Mr. Mount will owe a monthly payment of $161 thereafter until principal and interest at the contract rate are paid.

VI.

SHOULD THE TRIAL COURT AWARD MRS. MOUNT ATTORNEY'S FEES FOR REPRESENTATION HEREIN?

Carolyn Mount's position in this case was that Robert Mount was in contempt of court for failure to obey the court order to pay the home mortgage. Under Mississippi law, if Mr. Mount was found to be in contempt of court, he is liable for Carolyn's attorney fees. Newell v. Hinton, 556 So.2d 1037, 1043-44 (Miss. 1990); Smith v. Smith, 545 So.2d 725, 728-29 (Miss. 1989). The chancellor denied fees to Carolyn.
On reversal of the chancery judgment by this Court, the issue of Carolyn's entitlement to attorney fees is reopened. This Court holds that Carolyn Mount is entitled to attorney fees for representation in the trial court and also awards her attorney fees for her successful appeal. This cause is remanded to the trial court for determination of attorney fees at the trial court with reservations of an award for appellate attorney fees.
JUDGMENT IS REVERSED, RENDERED AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.
HAWKINS, C.J., and SULLIVAN, PITTMAN, BANKS and JAMES L. ROBERTS, Jr., JJ., concur.
DAN M. LEE, P.J., dissents with separate written opinion joined by McRAE and SMITH, JJ.
DAN M. LEE, Presiding Justice, dissenting:

ON PETITION FOR REHEARING
Because I believe that the findings reached by the Chancellor in this contempt action *1006 filed by Appellant regarding the fulfillment of the terms of the property settlement agreement reached between the parties was not manifestly wrong, clearly erroneous, or that an erroneous legal standard had been applied, I respectfully dissent from this Court's majority opinion on Petition for Rehearing.

LAW
In the divorce decree of July 17, 1974, the following provisions reflected the agreement concerning the marital home reached by the parties:
VI.
That the parties have agreed as to the disposition of their home located at 228 Holly Hills Drive, in the City of Biloxi, Mississippi, including all furnishings therein.
VII.
That the Defendant has agreed and will be responsible for payment of the house note in the amount of approximately One Hundred Sixty-One Dollars ($161.00), and ...
The agreed disposition was that Mrs. Mount would keep the house and, in exchange, Mr. Mount would get to keep his business, a restaurant/lounge on the beach in Gulfport. To this end, Mr. Mount, by quitclaim deed dated July 16, 1974, transferred all of his interest in the house to Mrs. Mount. The chancellor determined this arrangement to be a property settlement. However, he noted that the divorce decree, regarding the property settlement, was sufficiently "vague enough so that it required a little bit of an explanation."
The chancellor determined that in view of the language of the divorce decree and the quitclaim deed executed by Mr. Mount in favor of Mrs. Mount, that Mr. Mount intended for Mrs. Mount to have the house, and the proceeds from its sale, for herself in its entirety. However, the chancellor held that Mr. Mount's obligation regarding the mortgage terminated with the sale of the house. It is with this aspect of the chancellor's ruling that Mrs. Mount took issue.
The chancellor's interpretation of the divorce decree was a finding of fact. Therefore, the chancellor's finding is subject to the familiar substantial evidence/manifest error standard of review. This standard of review was discussed by this Court in Collins by Smith v. McMurry, 539 So.2d 127 (Miss. 1989), wherein we stated:
The standard of review used by this Court when examining findings of fact as made by the chancellor has been stated many times. In Richardson v. Riley, 355 So.2d 667 (Miss. 1978), it was stated thusly:
The principle of law with which we are concerned has been repeated by this Court many times. It is that where the chancellor was the trier of facts, his findings of fact on conflicting evidence cannot be disturbed by this Court on appeal unless we can say with reasonable certainty that these findings were manifestly wrong and against the overwhelming weight of the evidence. Even if this Court disagreed with the lower court on the finding of fact and might have arrived at a different conclusion, we are still bound by the chancellor's findings unless manifestly wrong, as stated above.

Id. at 668. See also Matter of Estate of Varvaris, 528 So.2d 800, 802-803 (Miss. 1988). (Involving the interpretation of a will).
More specifically, this Court has also addressed the proper scope of review for judging the credibility of witnesses. In Pellegrin v. Pellegrin, 478 So.2d 306 (Miss. 1985) the Court wrote:
The credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence where it is capable of more than one reasonable interpretation, are primarily for the chancellor as the trier of facts. The issue here was a factual one and the chancellor's decision will not be disturbed since it was not manifestly wrong.

Id. at 308. See also Johnson v. Brewer, 427 So.2d 118, 126-127 (Miss. 1983);
*1007 McKay v. McKay, 312 So.2d 12, 13-14 (Miss. 1975).
These cases make clear that this Court gives great deference to the decisions of the chancellor concerning findings of fact and especially to the credibility of witnesses. Therefore, it has generally been held by this Court that unless we are of the firm opinion that the chancellor's decision was incorrect or "manifestly in error," the decision of the chancery court will not be overturned.
McMurry, 539 So.2d at 129-130.
In this case, the chancellor held that under the terms of the property settlement as reflected in the divorce decree, Mr. Mount was not obligated to pay off the mortgage balance upon the sale of the house. The chancellor's interpretation of this settlement presents a finding of fact which we are bound to accept unless convinced that the decision was manifestly in error. The evidence presented supported the chancellor's ruling, therefore, I would affirm.
McRAE and SMITH, JJ., join this opinion.
NOTES
[1] When Robert Mount, Jr. was 20 years of age, he was diagnosed as having a mental disorder, "schizo affective disorder, which is a form of schizophrenia." For this disability, he receives a monthly Social Security check of $412 and a monthly SSI check of $15; in addition he is covered by Medicaid for some medical benefits.
[2] Her medical insurance provides a cap of $50,000 on lifetime benefits for mental illness and this sum has been exceeded.