IRVING, J.,
for the Court.
¶ 1. Ronnie Davis appeals a March 8, 1999 final judgment of the George County Chancery Court finding him in contempt and awarding Rebekah Davis, his former wife, a judgment against him in the amount of $10,353 for failure to comply with various provisions of their divorce decree. In his appeal Ronnie asserts that the trial court erred in finding him in contempt and granting a judgment against him for unpaid medical insurance premiums, nonpayment of an orthodontic bill, nonpayment of spring and fall clothing allotments, and an award of attorney’s fees.
¶ 2. Before addressing the merits of the appeal, we find it appropriate to address some procedural matters. The notice of appeal filed in this cause seeks a review of a judgment entered by the trial court on October 14, 1998. On October 24, 1998, Rebekah filed a motion for a new trial or in the alternative to reconsider. On November 12, 1998, before the court had ruled on Rebekah’s post-trial motion, Ronnie filed a notice of appeal. On February 25, 1999, the trial court ruled on Rebekah’s post-trial motion and a final decree in that regard was entered by the chancellor on March 8, 1999. Neither the ruling handed down on February 25 nor the decree entered on March 8, 1999, are included in the record which was filed with the clerk’s office on April 19, 1999.
¶ 3. On April 7, 1999, Ronnie filed with the clerk of the Mississippi Supreme Court a motion for authority to include supplemental notice of appeal, supplemental designation of record, and supplement certificate of compliance. The April 7 filing did not include a motion for supplementation of the record with respect to the February 25 ruling or the March 8 decree which is the subject of this appeal. On May 25, 1999, Justice Smith of the Mississippi Supreme Court denied, without prejudice, Ronnie’s motion to supplement because Ronnie failed to attach certified copies of the supplemental documents. Ronnie never re-filed the motion, and there is no evidence in the record that the supplementation was ever allowed by the Mississippi Supreme Court.
¶ 4. While it might appear at first blush that Ronnie’s failure to obtain authority to supplement is fatal to his appeal, we find that it is not. Rule 4(d) of the Rules of Appellate Procedure provides that a notice of appeal filed after announcement or entry of the judgment but before disposition of a motion for a new trial is ineffective to appeal from the judgment or order, or part thereof, specified in the notice of appeal, until the entry of the order disposing of the last outstanding post-trial motion described in the rule. Therefore, when Ronnie filed his notice of appeal prior to the court’s disposition of Rebekah motion for new trial, the notice’s effectiveness was postponed but not canceled, and it became effective again without further action on Ronnie’s part when on March 8, 1999, the chancellor entered judgment on the last outstanding post-trial motion mentioned in Rule 4. Thus, we find that it was not necessary for Ronnie to file a supplemental notice of appeal, and if it was not necessary to file such a notice, it would logically follow that Justice Smith’s denial of Ronnie’s motion to supplement should not preclude appellate consideration of Ronnie’s appeal which was initiated prior *939 to the trial court’s final order addressing the matter which forms the basis of the appeal.
¶ 5. We turn now to the issues raised by Ronnie in this appeal. Our review of the issues, as discussed below, leads us to the conclusion that the chancellor erred in ordering Ronnie to reimburse Rebekah for medical insurance premiums, and we reverse and render on this issue. The chancellor’s finding that Ronnie was in contempt for nonpayment of clothing allowances and the entry of judgment against him for the amount of the delinquency are affirmed. The judgment for the amount of the orthodontic bill is affirmed in part and reversed and rendered in part. The award of attorney’s fees is affirmed.
ANALYSIS OF THE ISSUES PRESENTED
Standard of Review
¶ 6. A citation for contempt is determined upon the facts of each case and is a matter for the trier of fact. Milam v. Milam, 509 So.2d 864, 866 (Miss.1987). A citation for contempt is proper when “the contemner has willfully and deliberately ignored the order of the court.” Bredemeier v. Jackson, 689 So.2d 770, 777 (Miss.1997). Contempt matters are committed to the substantial discretion of the trial court, and we will not reverse where the chancellor’s findings are supported by substantial credible evidence. Caldwell v. Caldwell, 579 So.2d 543, 545 (Miss.1991).

1. Medical insurance premiums

¶ 7. Rebekah Davis filed her complaint for contempt alleging that Ronnie refused to provide medical insurance and that his refusal caused her to acquire insurance coverage for their minor child. At trial, Rebekah testified that the medical insurance premiums totaled $108 per month and that she should be reimbursed for payments from the date of the divorce to the date of the trial. During the relevant time period, Rebekah had a family coverage medical insurance plan which also covered a child from another relationship.
¶ 8. Rebekah Davis admitted she received an insurance card for at least one year after the divorce; however, she stated she had not received any additional cards. Although no additional cards were given to Rebekah, it is undisputed that Ronnie continued to maintain insurance on the child after the first year, first through his employment and later though Cathy Davis’s (Cathy), his current wife, employment. Ronnie and Rebekah had many conversations about their child’s medical costs, but Ronnie never represented to Rebekah that he did not have the required insurance, and Rebekah could not say definitely that she ever asked Ronnie if he had insurance in place. Both Ronnie and Cathy testified that the minor child had been covered since 1988 by medical insurance obtained through Cathy’s job. Prior to that the insurance was maintained through Ronnie’s employment. Cathy’s insurance policy had been continuously maintained without any interruption of coverage.
¶ 9. The chancellor found Ronnie in contempt for not providing insurance for the parties’ minor child. The chancellor stated that Ronnie had a duty to pay the insurance premiums and furnish the insurance as agreed upon and as required by the divorce decree. As stated, it is undisputed that Ronnie provided medical insurance coverage during the questioned period. He was not specifically required by the terms of the divorce decree to provide Rebekah with evidence of that insurance by way of an insurance card although that would have been the appropriate thing to do. The separation agreement approved by the chancellor in the parties’ 1986 divorce had this to say about medical insurance:
It is agreed by and between the Parties that the Petitioner, Ronnie Davis, shall pay for and maintain a medical insurance policy for and on behalf of the *940 minor child of the Parties, and further that the Petitioner, Ronnie Davis, shall be responsible for all medical, dental, hospital, optical and prescription drug bills incurred by the minor child of the Parties.
¶ 10. With respect to Ronnie’s obligation to reimburse Rebekah for the insurance premiums, the chancellor found that Rebekah never requested that Ronnie provide her with the name of the insurance company, policy number or claim form with respect to any insurance that Ronnie carried for the minor child. The chancellor further found:
As to the insurance premiums, the Court is of the opinion that it was the duty of Mr. Davis to pay the insurance premiums and furnish the insurance and evidence of same as he agreed and as the Order required and initially found in the prior rulings. The evidence has shown that Mr. Davis had insurance and that no card was sent to Ms. Bailey. That Mr. Davis and Mrs. Bailey[1] had discussions more than once that would warrant him taking the effort to send evidence of the insurance to her. True, there is no dispute that he had insurance in effect, but it was his duty under the order to forward same in order that Ms. Bailey could claim the benefits of that coverage. The Court is not blind to the fact that the premiums were not sent [to Mr. Davis by Mrs. Bailey] and documented, (emphasis added).
¶ 11. As stated, Ronnie should have voluntarily given Rebekah an insurance card as evidence of insurance. However, he was only ordered to maintain medical insurance. That he did. However, the chancellor apparently concluded that Ronnie’s failure to tender the insurance card was tantamount to a failure to comply with the terms and conditions of the divorce decree which contained no explicit requirement that he do so. Rebekah was on notice, just as Ronnie was, that he was required to carry medical insurance on their minor child, yet she never asked him if he had coverage in place or requested the name of the insurance company or policy number. While the chancellor did not explicitly find that Ronnie’s failure to give Rebekah an insurance card resulted in Rebekah having to acquire the insurance herself, as contended by Rebekah, his finding has that effect. The record, however, does not support such a result. Rebekah had a family plan which covered her and both of her children, including the child for whom Ronnie was not responsible. Though she testified that when she obtained the family policy, her other child would have been eligible for Medicaid, she also testified that the other child’s father was not paying any support and she elected to procure the policy. Also, there is no evidence that she would have had insurance for herself in the absence of procurement of the family plan. Further, the evidence is that the premium under the family plan was the same for two children as it was for one child.
¶ 12. Although Ronnie mentions he had insurance in place concurrent with the insurance carried by Rebekah, as found by the chancellor, his argument is not that he had insurance in place as required by the divorce decree; therefore, he should not have to reimburse Rebekah for the premiums she paid for insurance during the same period. Rather, his argument is that he should not be liable because she never tendered the premium bills to him. He relies on Milam v. Milam, 509 So.2d 864 (Miss.1987) to undergird his argument. The divorce decree did not direct Rebekah to acquire medical insurance and Ronnie to pay the premiums for the insurance acquired. As stated, it required him to maintain insurance which he did. The *941 chancellor did not base his holding on the respective competing equities of the situation in light of the fact that Ronnie never gave Rebekah a medical insurance card after the first year or two. Rather, he interpreted the divorce decree as requiring Ronnie to give Rebekah an insurance card. One cannot be held in contempt of court for something he has not been specifically, clearly and unambiguously ordered to do or not do. Switzer v. Switzer, 460 So.2d 843, 845 (Miss.1984). Nor can it legitimately be argued that the equities are on Rebekah’s side. She never asked Ronnie if he had insurance nor did she ask for an insurance card, for the name of the insurance company or for a policy number, and she never sent any insurance bills to him for payment.
¶ 13. Notwithstanding the fact that Ronnie does not argue compliance with the decree as a basis for reversal of the judgment finding him in contempt, we feel constrained to notice as plain error this application of an erroneous legal standard. Therefore, we find that the chancellor’s finding that Ronnie was in contempt of court for not maintaining medical insurance and ordering him to reimburse Rebekah for $3,888 in medical insurance premiums paid by her for the family policy covering the parties’ child, herself and the other child, is clearly erroneous and is reversed and rendered.

2. Orthodontic expenditures

¶ 14. Ronnie also argues that the trial court erred in finding him in contempt for non-payment of an orthodontics bill in the sum of $4,500. We do not read the chancellor’s ruling as Ronnie does. The record reveals the chancellor found that judgment should be rendered against Ronnie for the orthodontic bill, but “Ronnie would likewise not be in contempt of court on this count in that the bill was not forwarded to him with exactitude in order for him to pay.”
¶ 15. We now turn to the propriety of the award of judgment for the orthodontic bill. Ronnie argues that Rebekah did not give him either notice or a copy of the orthodontic care expenditures and because of that fact Milam v. Milam, 509 So.2d 864 (Miss.1987) precludes recovery against him. In his February 1999 ruling, which was incorporated into the March 1999 decree, the chancellor held that neither Milam nor the statute of limitations applies to the orthodontic bill “in that it escapes time and would not fall within the same category as the bills or the premiums.” On the other hand, Ronnie contends that orthodontic care clearly falls within the term of “medical expenses” and that he must be given notification of such medical expenses and a copy of the bill pursuant to the parameters set forth in Milam. Rebekah testified that the orthodontic service was not merely cosmetic. Ronnie presented no evidence to the contrary. Therefore, we agree with Ronnie’s contention that the bill for orthodontic care in this case, based on the facts presented, clearly is a medical expense. See Smith v. Smith, 405 So.2d 896, 898 (Miss.1981) in which the Mississippi Supreme Court held that “it is a question of fact” as to whether or not the orthodontic treatment of the child is reasonably necessary, and, if so, such treatment comes within the term “medical expenses.”
¶ 16. Milam is similar to the case at bar. In Milam, Mrs. Milam prayed for reimbursement of medical expenses. Mr. Mi-lam was obligated by the prior decree to provide medical care for the children. The Mississippi Supreme Court noted that Mrs. Milam did not consult Mr. Milam before medical care was obtained nor did Mrs. Milam ever submit the bills for payment; consequently, the court reversed and rendered the chancellor’s award of medical expenses because Mr. Milam was not provided notice or a copy of the bills. Ronnie argues that Milam required Rebekah to consult him before the medical care was obtained and submit the bill to him for payment. The record reflects that Rebekah did not consult her husband before *942 consulting the orthodontist nor did she submit the bill for payment. At trial, Rebekah testified that she consulted the orthodontist in the summer of 1996. Rebekah admitted that she did not confer with her husband prior to the summer of 1996; however, Rebekah testified that she did discuss the minor child’s need for braces with Ronnie later during the year. The actual service for the braces was not rendered until the fall of 1996, and Ronnie admitted that he discussed the issue of braces prior to the minor child getting braces. Based on these facts, we find that Ronnie had ample notice of the orthodontic expenses though no bill was ever presented to him.
¶ 17. Although we have found that the orthodontic expenses incurred by Rebekah for the parties’ minor child are medical expenses within the meaning of Milam, we want to make clear that this holding is fact specific. We also want to make clear that we do not read Milam as prohibiting, in every instance, recovery of all medical expenses not timely presented to the party who has the responsibility for paying them or that notice must be given, prior to incurring the expense on behalf of the minor, to the party responsible on the divorce decree for paying the bill. We note in Milam that neither notice of any sort nor a copy of the bill was ever presented to Mr. Milam. Therefore, the question was whether Mr. Milam should be obligated to pay under that set of circumstances. We further note that during a portion of the period when the expenses were incurred Mr. Milam had insurance which would have covered payment had the bills been timely presented. The Mi-lam court did not reach the question of whether both presentment of the bills for payment and prior notice of their being incurred were a prerequisite to holding the responsible party liable for payment. The court simply observed that neither was the circumstance there.
¶ 18. In this case, the record fails to reveal whether Ronnie had insurance in place which also would have covered the orthodontic expenses had the bills been presented to him. Also, we note the chancellor’s finding that Ronnie’s attorney represented that Ronnie would be willing to pay the bill but needed a copy to do so. Consequently, on these facts, we decline to disturb the chancellor’s finding, subject to the limitation which we impose in our next discussion, that Ronnie is responsible for the orthodontic expenses.
¶ 19. Ronnie further contends that, even if he is found to be responsible for the orthodontic expenses, he should be responsible only for the amount of basic service. The actual amount of the basic orthodontic service was $3,422.50; however an additional amount of $200 was charged for clear braces instead of metal braces. The balance of the $4,500 allowed by the chancellor constitutes interest at the rate of 9.99% on a promissory note executed by Rebekah to secure funds to pay the bill. The chancellor found the expenses to be reasonable, and we agree with the chancellor’s finding except as to the additional $200 charged for the clear braces. We agree with Ronnie’s contention that the clear braces which cost $200 more than standard braces were cosmetic and not reasonably necessary. We, therefore, reduce by $200 the amount allowed by the chancellor for the orthodontic bill.

3. Amendment of the complaint and finding of contempt for nonpayment of clothing allowance

¶ 20. Ronnie complains that he was prejudiced by the trial court’s allowing Rebekah, on the day of the trial, to amend her complaint to claim arrearage in the payment of the clothing allotment required of him by the divorce decree. He claims since Rebekah did not plead this allegation, he was ambushed and had he known he could have presented the defense of payment. Notwithstanding Ronnie’s appellate argument, we can find nowhere in the record that his trial counsel made this argument in the court below. In fact the *943 record reflects that Ronnie’s counsel made no objection when Rebekah’s counsel questioned her on direct examination about the delinquency. On direct examination, Rebekah testified without objection that Ronnie was in arrearage in the amount of $140 in child support and $850 in support for school clothes. The record reflects that counsel cross-examined Rebekah about what he perceived as a discrepancy between what she had pled in her complaint and what she had testified to on direct examination, but counsel made no claim that his client was being ambushed. After counsel had cross-examined Rebekah on the point for a while, he was interrupted by the court as follows:
THE COURT: What’s the point?
MR. HURT: Sir?
THE COURT: What’s the point?
MR. HURT: It wasn’t raised in the pleadings.
THE COURT: All right. Well, you don’t raise that with the witness necessarily, you raise that with the Court on a motion, wouldn’t you?
MR. HURT: Yes, we certainly will at the appropriate time, may it please the Court. She testified to that as part of child support arrearage. Your Honor has already stated that Your Honor considers that outside the child support obligation, they’re including that in the claim for child support arrearage.
THE COURT: Well, it’s child support. It’s just a question of what — how you classify it. I’m taking that as not the routine, daily, weekly obligation, but it does go to the benefit of that. But I think, technically, it all is classified as child support but it really is in a different class in my judgment. But it still would be due and owing, subject to whatever credits he’d have. We’ll look at it. Go ahead
¶ 21. It is clear from the above colloquy that counsel for Ronnie did not claim surprise or prejudice and apparently would have been content to simply persist in his cross-examination of Rebekah on the point had he not been interrupted by the court. So far as we can tell from the record, counsel for Ronnie never raised the issue again as he promised he would do. It was Rebekah’s counsel who raised the matter again.
MR. MURPHY:
Q. Counsel raised an objection to the $50.00 spring and fall allotment.
THE COURT: Are you going to Rule 15?
MR, MURPHY: Yes, sir.
THE COURT: Okay, what do you say, Darryl [Mr. Davis’s counsel], move to conform to the proof.
MR. MURPHY: We prayed for special and general relief and I think it ought to be broad enough to let us amend it.
THE COURT: To conform to the proof?
MR. MURPHY: Yes, sir.
THE COURT: What do you say?
MR. HURT: Your Honor, we’re going to object to that as being outside of the child support obligations. It was a specific item and we object to it.
THE COURT: Well, Rule 15 says, Judge, be as liberal as possible, get all of the issues tried as much as possible. This is within thé framework of the lawsuit. I will grant the amendment and I’ll consider the weight and worth of the evidence and testimony as to whether or not the relief is granted in the judgment. The motion to amend is sustained consistent with Rule 15 which is rather liberal even allowing amendments after judgment under the McMillan case. All right. Okay, you rest?
MR. MURPHY: Yes, we rest.
THE COURT: Okay, Darryl are you ready to go forward? Do you want to take about five minutes?
MR. HURT: That’ll be fine, Your Hon- or.
(COURT STANDS IN RECESS.)
*944 MR. MURPHY: That’s all we have, Judge
THE COURT: Okay. Over to you. Go ahead, Darryl.
MR. HURT: May it please the Court, we call Ronnie Davis.
¶ 22. It is well settled in our jurisprudence that non-constitutional or non-jurisdictional issues cannot be raised for the first time on appeal. Wright v. White, 693 So.2d 898, 903 (Miss.1997). Therefore, Ronnie’s appellate argument on this point is procedurally barred. Procedural bar not withstanding, the issue is utterly without merit. We affirm the holding of the chancellor allowing the amendment and finding Ronnie in contempt for nonpayment of child support which includes the clothing allowance.

4. Attorney’s fees

¶ 23. The law likewise is well-settled in this jurisprudence that one found in contempt of court may be assessed with attorney’s fees. Mount v. Mount, 624 So.2d 1001, 1005 (Miss.1993). Ronnie concedes as much. He simply argues that the chancellor erred in finding him in contempt. As we have already found that Ronnie was properly held in contempt, there is no need to address this issue further. The chancellor’s award of $1,000 attorney’s fees to Rebekah is affirmed.
CONCLUSION
¶ 24. The judgment entered by the chancellor was for $10,353 which included $4,500 for orthodontic services, $1,000 for attorney’s fees, $850 for delinquent clothing allowance, $115 in court costs and $3,888 for medical insurance premiums. We have reduced the amount for orthodontic services to $4,300 and reversed the award of $3,888 for medical insurance premiums. Therefore, we reverse the judgment of the lower court in the amount of $10,353 and render judgment here for Rebekah for in the amount of $6,265,
¶ 25. THE JUDGMENT CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND RENDERED IN PART. THE CHANCERY COURT’S FINDING OF CONTEMPT FOR NONPAYMENT OF INSURANCE PREMIUMS IS REVERSED AND RENDERED. THE CHANCERY COURT’S FINDING OF LIABILITY FOR NONPAYMENT OF THE ORTHODONTIC BILL IS AFFIRMED BUT THE AMOUNT ALLOWED IS REDUCED BY $200. THE CHANCERY COURT’S FINDING OF CONTEMPT FOR NONPAYMENT OF THE CLOTHING ALLOWANCE AND THE AWARD OF ATTORNEYS FEES ARE AFFIRMED. THE COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.

. Bailey is Mrs. Davis's maiden name. In her complaint for contempt, modification and change of name which underlay this appeal, Mrs. Davis asked to be restored to her maiden name. The chancellor granted that request in his January 16, 1998 decree. However that decree was set aside by the decree entered on March 8, 1999.