# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CT-00824-SCT

*LARRY GENE DALTON*

*v.*

*LINDA ANN DALTON*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 5/14/2001 |
| TRIAL JUDGE: | HON. J. LARRY BUFFINGTON |
| COURT FROM WHICH APPEALED: | COVINGTON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | DAVID SHOEMAKE |
| ATTORNEY FOR APPELLEE: | ALEITA M. SULLIVAN |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 06/03/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COBB, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    Although we agree with the result reached by the Mississippi Court of Appeals in ***Dalton v. Dalton***, 852 So. 2d 586 (Miss. Ct. App. 2002), we granted certiorari to clarify the law with regard to post-divorce modification of a property settlement agreement executed in the course of an irreconcilable differences divorce.

¶2.    Linda Ann Dalton and Larry Gene Dalton were granted an irreconcilable differences divorce by the Covington County Chancery Court on October 12, 2000. As is customary for irreconcilable difference

divorces, the parties executed a property settlement agreement which was approved by the trial court and was incorporated into the final divorce decree. The agreement required that certain real estate transactions be completed within 60 days from the date the property was appraised. A dispute between the parties prevented them from completing the transactions within the allotted time. Both parties filed motions for contempt, Linda on December 7, followed by Larry on December 19, 2000. A hearing was held on January 19, 2001, after which the trial court entered an order extending the time for compliance with the agreement by 14 days and directing payment of certain claims raised by Linda in her contempt complaint.

**FACTS**

¶3. As a part of their irreconcilable differences divorce, the Daltons filed a property settlement agreement which allowed them to purchase the equity in certain jointly owned real properties from each other. This agreement also divided personal property and addressed other items not at issue in this appeal. The chancellor ratified and approved the property settlement agreement, finding that it made adequate and sufficient provisions for the settlement of all property rights between the parties, and that it was reasonable.

¶4. The portion of the agreement covering real property provided a metes and bounds description of four tracts of land situated in Covington County, Mississippi, and jointly owned by the parties. Tract I contained approximately 5.3 acres; Tract II contained 2 acres; Tract III contained 1.14 acres; and Tract IV was for a subdivision lot in Sherwood Forest, Part #5. Immediately after the real estate descriptions appeared the operative language of the agreement out of which the dispute before this Court arose, as follows:

> 1. That the hereinabove described land shall be appraised and that Arnold Mooney of Collins, Mississippi, shall appraise said property and the parties shall each pay Arnold Mooney one-half of the costs of the appraisals. That Wife shall have the right to purchase Husband's interest in Tracts I, III, and IV, for one-half of the equity therein or one-half of

2

the appraised value thereof less all sums owed thereon. That Wife shall have sixty days from the date of said appraisal to purchase Husband's interest in said property and if within said sixty days Wife does not purchase Husband's interest in said property, then Husband shall have sixty days from said date thereof within which to purchase Wife's interest in said property. If Husband does not purchase Wife's interest in said property within said 60 day period then said property shall be sold and the proceeds divided equally between the parties, subject to the lien thereon.

2. That Husband shall have the right to purchase Wife's interest in Tract II of the hereinabove described land for one-half of the appraised value thereof less all sums owed thereon and Husband shall have sixty days from the date of said appraisal within which to purchase Wife's interest in Tract II of the hereinabove described land. That if Husband does not purchase Wife's interest in said Tract II within sixty days from date of said appraisal then Wife shall have the right to purchase Husband's interest in said land within sixty days thereof. If Wife does not purchase Husband's interest in said land during said period that the land (Tract II) shall be sold and the proceeds divided equally between the parties.

3. That upon tender of a check for one-half of the appraised value thereof less the liens thereon to the other person, (subject to the medical bills as set forth in VI. A. 1.) that said person selling said property shall execute a Quitclaim Deed and convey to the other person, his or her undivided interest therein.

¶5.     The appraisal was submitted on October 19, giving Linda and Larry until December 18, 2000, to complete the purchases of their respective tracts. Linda secured a real estate loan to purchase Larry's interest in the three tracts of land offered to her for initial purchase. The loan closing was scheduled for November 27, 2000, but at closing, the parties could not agree on the amount that should be tendered to Larry by Linda, and the closing was delayed. The closing attorney asked Linda to provide him something in writing defining the amount to be paid to Larry. Soon thereafter, Linda gave the attorney an amount that included deductions for various items that Linda believed were due her under the terms of the property settlement agreement, and also included certain items that were not specifically part of the original agreement.[1] Larry refused to tender the deed unless the full 1/2 equity amount was paid, and refused to

---

[1] Linda claimed the proceeds to Larry should be reduced by the following deductions:

3

allow any deductions. Thus the closing was not concluded. As of the date of filing this appeal, neither party had tendered money in an effort to purchase the other's equity in any property.

¶6.    On December 7, 2000, Linda filed a motion for contempt charging that Larry had not complied with the provisions of the property agreement in several specific instances. Among these were the same items she had identified as deductions in her earlier attempt to close.  On December 19, Larry filed a motion for contempt charging that Linda had not fulfilled her obligation to purchase the marital home within the required 60 days, and urged the court to have the home sold and divide the funds between the parties.

¶7.    The chancery court conducted a hearing on the contempt charges on January 19, 2001.  It was brought out during the hearing that neither party had closed on any property, many of the provisions of the property settlement were still in non-compliance, and neither party was being cooperative.  The chancellor declined to find either party in willful contempt, saying that both parties had a good faith misunderstanding. He also said that he was satisfied that Linda attempted to purchase the property even though she wrongfully felt that certain claims could be deducted from the amount she was to remit to Larry, and that these claims should have been brought in a contempt action.  The chancellor then set a new time frame for closing on

---

| one-half equity | $29,466.00 |
| ½ lot value | $    400.00 |
| less value 2 acres | $ 2,200.00 |
| less ½ closing costs | $ 1,113.00 |
| less ½ tax & escrow refund to Larry | $    500.00 |
| less quilt | $ 2,000.00 |
| less 2 house payments and late fees | $    625.00 |
| less ½ appraisal | $    325.00 |
| less medical bills | $    800.00 |
| less damage to house | $ 1,000.00 |
| less personal items missing from house | $ 1,000.00 |

the properties and determined the amounts to be tendered by each party, which included some of Linda's claims.[2]

¶8.	On direct appeal, the Mississippi Court of Appeals correctly held that the chancellor did not abuse his discretion and that the record supported that a good faith misunderstanding existed between the parties as to the effect of the property settlement agreement, and that it was therefore appropriate for the chancellor to resolve those ambiguities, and give the parties an opportunity to effect the intended purpose of the contract.  This Court granted Larry Dalton's petition for writ of certiorari, in which he claims that the

---

[2]The chancellor stated:

And based on my figures and what I've got as far as the appraisals there, and just so there's not any question, I want everybody -- Mr. Dalton hasn't closed on his land either. And instead of passing checks back and forth, I'm going to allow Ms. Dalton to tender to Mr. Dalton the sum of $26,439.46.  Coming to this figure, one-half of the equity is $30,466.47. [S]he was also purchasing a lot which was $400.  That's $30,866.47 that he would be entitled to.  I'm deducting the $2200 which was half the value on the two acres that he's getting that he will get at this date.  I'm deducting the $625 for the payment on the house.  He was living in the house at the time.  And therefore that even though it may not have been a proper motion at that time, it's proper now so I'm going to make it that way so we can cure all of this.  The appraisal fee was $300.  It would [sic] $600 according to what was tendered instead of the 650 as this shows.  So I'm going to allow him a deduction of $300 to be paid to Mr. Mooney.  And the decree does say that the $800 -- and that is one thing that I noticed on Mr. Shoemake's demand that she tender on the [sic] closing the full amount without any deductions.  The Court decree is quite explicit that it does allow an $800 deduction.  So therefore that $800 will be deducted from the amount that she would have owed.  And then there was the tax and the escrow refund.  So therefore based on my figures, there was a total deduction of $4,452 -- excuse me. $4,477.  That is to be deducted.  So that would have been -- leaves a balance of $26,439.46 that would be due.
. . .
	Of course, as stated and I think as agreed to, she's entitled to one-half of the CDs a [sic] set forth, plus the interest from the date that the CDs were purchased.
. . .
	The water bill and the electric bill, she testified to that. . . .So upon her tendering to Mr. Shoemake the bills showing what those amounts were prior to her moving in, . . . he'll pay those two amounts. . . .

5

decision of the Court of Appeals approving the chancellor's modification of the terms of the property settlement agreement, is in conflict with prior decisions of this Court.

## ANALYSIS

¶9. The findings of the chancery court concerning findings of fact, particularly in the areas of divorce and child support, will generally not be overturned by this Court on appeal unless they are manifestly wrong. *Nichols v. Tedder*, 547 So.2d 766, 781 (Miss. 1989). This Court always reviews a chancellor's findings of fact, but we do not disturb the factual findings of a chancellor unless such findings are manifestly wrong or clearly erroneous. *Vaughn v. Vaughn,* 798 So. 2d 431, 434 (Miss. 2001). Findings of the chancellor will not be disturbed or set aside on appeal unless the decision of the trial court is manifestly wrong and not supported by substantial credible evidence, or unless an erroneous legal standard was applied. *Pearson v. Pearson*, 761 So.2d 157, 162 (Miss. 2000). This same standard is applied even when conflicting evidence has been presented by the parties. *See Harvey v. Meador*, 459 So.2d 288, 293 (Miss. 1984).

¶10.     This Court has historically recognized that parties may, upon dissolution of their marriage, have a property settlement incorporated in the divorce decree, and that such property settlement is not subject to modification.  *East v. East*, 493 So. 2d 927, 931 (Miss. 1986).  A property settlement agreement is no different from any other contract, and the mere fact that it is between a divorcing husband and wife, and incorporated in a divorce decree, does not change its character. *Id.* at 932.  However, in *Estate of Kennington v. Kennington*, 204 So. 2d 444, 445 (Miss. 1967),[3] Mrs. Kennington sought specific performance of the marital settlement agreement which was incorporated into the decree of divorce.  This Court found that the agreement was a valid contract, the  obligation rested on contract, and the liability of Mr. Kennington's estate was absolute.  Notwithstanding that finding, this Court further stated that "[c]ourts of equity have certain discretionary power in the matter of decreeing the specific performance of contracts and they may and should make equitable modifications in the form of relief granted where to do otherwise would result in undue hardship or injustice." *Id.* at 450.

¶11.     The settlement agreement was incorporated into the trial court's judgment and the divorce was granted, pursuant to Miss. Code Ann. § 93-5-2 (Rev. 1994).  The chancellor's  modification was made in the course of a hearing on contempt charges filed by each party against the other less than two months later.  After hearing from both parties, the chancellor held neither of them in contempt, finding that both parties had a good faith  misunderstanding of the manner in which the terms of the property settlement agreement were to be carried out.  Faced with the passage of time, which in effect had negated the buy out provisions of the agreement, the chancellor proceeded to review the various provisions of the agreement

---

[3] That this case predates the irreconcilable differences divorce statute, does not diminish its precedential value in the present case.

and crafted a modification to address the points of misunderstanding. Neither party objected at the time.

¶12.    ***Switzer v. Switzer***, 460 So.2d 843 (Miss. 1984), concerns a contempt proceeding based on violation of a property settlement agreement incorporated into the final decree in an irreconcilable differences divorce. This Court stated that "where ambiguities may be found, the agreement should be construed much as is done in the case of a contract, with the court seeking to gather the intent of the parties and render its clauses harmonious in the light of that intent." ***Id.*** at 846. In response to the argument of one of the parties that property settlement agreements are not modifiable, we explained:

> Our attention is called to ***Logue v. Logue***, 234 Miss. 394, 106 So.2d 498 (1958); ***Stone v. Stone***, 385 So.2d 610 (Miss.1980); ***Taylor v. Taylor***, 392 So.2d 1145 (Miss.1981) to the effect that the part of the separation agreement which deals with a property settlement where supported by valid considerations may not be modified. The point escapes us. That such a provision may not be modified in no way negates the power of the court to enforce it via contempt or any other remedy otherwise available in aid of the enforcement of judgments and decrees.

460 So.2d at 846.

¶13.    So the pivotal issue becomes how much deference a chancellor should be given in enforcing property agreements and resolving disputes between parties concerning a property agreement, during a contempt proceeding. The chancellor found a good faith misunderstanding on the part of the parties regarding the terms of a recently executed agreement. There was no abuse of discretion in molding the agreement to conform to the intent of the parties. We hold that the chancellor's actions were proper under the circumstances.

### CONCLUSION

¶14.    For these reasons, we affirm the judgments of the Court of Appeals and the Covington County Chancery Court.

¶15.   **AFFIRMED.**

**SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR.  DIAZ, J., NOT PARTICIPATING.**